**W. A. BOYLE et al., Plaintiffs,**

**v.**

**NORTH ATLANTIC COAL CORPORA-
TION, a corporation, Defendant.**

**Civ. A. No. 70–512.**

United States District Court,
W. D. Pennsylvania.

Aug. 3, 1971.

Jack W. Plowman, Plowman & Spiegel, Pittsburgh, Pa., Welly K. Hopkins, Harold H. Bacon, Joseph T. McFadden, T. G. Dudley, Washington, D. C., for plaintiffs.

Lewis J. Nescott, Ruby, Nescott & Taylor, McKeesport, Pa., for defendant.

## OPINION

TEITELBAUM, District Judge.

This two count action was brought on behalf of the United Mine Workers of America Welfare and Retirement Fund of 1950, to recover royalty payments alleged to be due and owing the Fund by the defendant, North Atlantic Coal Corporation. Underlying the action are two National Bituminous Coal Wage Agreements between the United Mine Workers of America and the defendant. Count I alleges that the defendant is in default on a promissory note representing the royalties due on the coal produced by the defendant from the period October 7, 1966 to March 1, 1967. Count II alleges that the defendant has failed to pay the royalties due on the coal which it produced from the period March 1, 1967 to March 31, 1970. The defendant admits the execution of the collective bargaining agreements and the note, but raises a welter of defenses. On the theory that the defenses raised are legally insufficient to defeat its claims, the plaintiffs have moved for partial summary judgment. (Partial because the amount of coal produced by the defendant relating to Count II is in dispute.) In passing on this motion we must, of course, construe all material facts and inferences in the light most favorable to the

defendant. See 6 Moore's Fed.Prac., ¶56.15[3], p. 2337.

■ The defendant first contends that the provisions of the collective bargaining agreements require the plaintiff to submit its claims to arbitration before it institutes court action. This contention fails to recognize the distinction between the United Mine Workers of America and the plaintiff. The plaintiff is not a party to the collective bargaining agreement. It is a party only to the attendant trust indenture agreement and its rights thereunder are decidedly unencumbered by the duties of the UMW under the collective bargaining agreement. Lewis v. Benedict Coal Corporation, 361 U.S. 459, 80 S.Ct. 489, 4 L.Ed.2d 442 (1960). In Lewis v. Harcliff Coal Company, C.A. No.63–879 (D.C.W.D.Pa., 1964), the independence of the Welfare and Retirement Fund from the UMW was recognized, and the defendant's contention in that case that the plaintiff's claim was subject to the arbitration provisions of the collective bargaining agreement was rejected. We similarly reject the contention.

■ Secondly, the defendant interposes the defenses of accident, mistake, misrepresentation, deceit, fraud, duress, and modification. The factual allegations offered to support these defenses arise essentially from oral representations allegedly made to the defendant by the plaintiffs that (1) it would be permitted to pay 10 cents per ton rather than the 40 cents per ton which the agreement called for, (2) it would not be forced to pay at all if it was unable to, and (3) it would be struck if it did not sign the promissory note.

■ As a matter of law, oral understandings at variance with written agreements regarding royalty payments are of no effect. Section 302(c) (5) of the Labor-Management Relations Act, 29 U.S.C. § 186(c) (5), the statutory origin of welfare and retirement funds, requires that the detailed basis upon which royalty payments are to be made to a welfare and retirement fund be specified in a written agreement between the trustees and the employer. In Lewis v. Seanor Coal Company, 382 F.2d 437 (C.A. 3, 1967), cert. den'd 390 U.S. 947, 88 S.Ct. 1035, 19 L.Ed.2d 1137 (1968), this Circuit held,

" * * * that an oral modification which would have suspended the payment of the forty cents per ton royalty into the [welfare and retirement fund] by the employer was ineffective because it violated § 302(c) (5) (B)."

Although in that case the Court was confronted with a subsequent oral modification, the rationale seems to apply with equal force to a prior oral understanding. The rationale in that case derived from a thorough examination of the Congressional policy underlying the section. That policy was found to be the protection of the employees from unknown collusive and illicit side arrangements between welfare and retirement funds and employers. In terms of this policy, no sound distinction may be made between subsequent modifications and prior understandings. To permit secret side arrangements induced prior to the written agreement would be as frustrating to the purpose of § 302(c) (5), as is giving effect to subsequent arrangements. A fair reading of Congressional policy requires giving effect to neither. Therefore, those defenses with respect to the alleged oral representations regarding the extent to which the written agreement would be enforced are legally insufficient to defeat the plaintiffs' claims. See Biggs, C. J., dissenting in Lewis v. Mears, 297 F.2d 101 (C.A. 3, 1962); Sobeloff, J., dissenting in Lewis v. Lowry, 295 F.2d 197 (C.A. 4, 1961); and Lewis v. Benedict Coal Corporation, *supra*. Cf. Lewis v. Lowry, 322 F.2d 453 (C.A. 4, 1963) and Lewis v. Mearns, 168 F.Supp. 134 (D.C.N.D.W.Va., 1958).

■ Whether or not a threat of a strike during the effective term of a collective bargaining agreement constitutes duress presents an interesting proposi-

tion.[1] Its resolution, however, is not necessary to our decision. Assuming that the threat to strike constituted duress, the defendant's ratification of the note subsequent to its execution nullifies the defense. Plaintiffs' uncontroverted Affidavit of William A. Blizzard, Assistant to the Comptroller, Welfare and Retirement Fund, establishes that the defendant made six payments on the contested note. Moreover, at no time prior to the institution of this action did the defendant assert the invalidity of the note. In fact it supported the application of some of its employees for the benefits of the agreement underlying the note. In Lewis v. Kerns, 175 F.Supp. 115 (D.C.S.D. Ind., 1959) the Court stated,

"[A]ssuming, however, that the duress alleged '[a strike]' * * * was unlawful, the contracts are not void but only voidable and may be ratified and affirmed by the party upon whom the alleged duress was practiced. * * *"

The Court further stated that,

"* * * to render a contract voidable by reason of duress an election to rescind * * * must be made within a reasonable time"

and held that,

"* * * the defendants having ratified the contracts by their actions and [having failed] to rescind over a period of three years are now estopped to deny the validity of the contracts".

These principles of law have been similarly and consistently applied in other actions brought by the United Mine Workers of America Welfare and Retirement Fund to recover royalty payments. Lewis v. Coleman, 257 F.Supp. 38 (D.C. S.D.W.Va., 1966); Lewis v. Harcliff Coal Company, 237 F.Supp. 6 (D.C.W. D.Pa., 1965); Lewis v. Mill Ridge Coals, Inc., 188 F.Supp. 4 (D.C.E.D.Ky., 1960), aff'd 298 F.2d 552 (C.A. 6, 1962); and

Lewis v. Cable, 107 F.Supp. 196 (D.C. W.D.Pa., 1952). The defense of duress, by a threat of a strike, then, is also legally unavailable to the defendant in this action.

The plaintiffs' Motion for Partial Summary Judgment is granted. An appropriate Order will be entered.

---

1. Professor Williston examines, cursorily but interestingly, this proposition in 13 Williston on Contracts, 3d Ed., § 1617A.