**LOCAL UNION NO. 103, INTERNATIONAL ASSOCIATION OF BRIDGE, STRUCTURAL AND ORNAMENTAL IRON WORKERS, AFL–CIO, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 75–1060.

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 21, 1975.

Decided March 31, 1976.

Rehearing Denied June 25, 1976.

Sydney L. Berger, Evansville, Ind., with whom Charles L. Berger, Evansville, Ind., was on the brief, for petitioner.

Aileen A. Armstrong, Atty., N. L. R. B., Washington, D. C., with whom John S. Irving, Deputy Gen. Counsel, Patrick Hardin, Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, and Robert A. Giannasi, Asst. Gen. Counsel, N. L. R. B.,

Washington, D. C., were on the brief, for respondent.

Before DANAHER, Senior Circuit Judge, LEVENTHAL, Circuit Judge, and VAN PELT,* United States Senior District Judge for the District of Nebraska.

Opinion for the Court filed by Senior Circuit Judge DANAHER.

DANAHER, Senior Circuit Judge:

Local Union No. 103 filed its petition stating the issue thus:

> Whether an employer can abrogate unilaterally and breach a validly executed collective bargaining pre-hire agreement merely because the agreement was a pre-hire agreement in the construction industry validly entered into pursuant to Section 8(f) of the National Labor Relations Act.[1]

The Board by way of counterstatement suggests that we consider:

> Whether the Board properly found that the Union violated Section 8(b)(7)(C) of the Act by conducting recognitional picketing at the Company's jobsites for more than 30 days without filing a representational petition.

It is clear enough that the Board was— and is—unhappy with this court's opinion in *Local No. 150 v. National Labor Relations Board*, footnote 1, *supra*, although the

Board had never appealed, nor did it seek rehearing *en banc*, it now asks us to reconsider and overrule our *Local 150* decision.

## BACKGROUND

The Board in its Decision and Order noted that the material facts are essentially undisputed, with Higdon Construction Company, an employer engaged primarily in the building and construction industry within Section 8(f) of the Act, and Local 103, by the same token, a labor organization of building and construction employees. Higdon Construction Company (herein Higdon Construction) and the Local had had a collective-bargaining relationship since 1968. Their initial contract, which expired in December 1972, had been negotiated under Section 8(f).

In July 1973 Higdon Construction was engaged in the performance of a construction contract at Glenmore Distillery. Local 103 refused to furnish employees unless Higdon Construction were to execute a contract. After the job had twice been shut down, Higdon Construction on July 31, 1973, signed an acceptance of agreement covering Local 103 Ironworkers. Higdon Construction agreed to abide by an existing agreement, which by its terms expires on March 31, 1976, between Tri-State Iron Workers Employers Association, Inc. and Local 103.[2]

---

* Sitting by designation pursuant to Title 28, U.S. Code § 294(d).

1. Additionally the Union poses the inquiry:
   Whether the National Labor Relations Board may disregard and refuse to follow this Court's decision in *Local No. 150, International Union of Operating Engineers, AFL–CIO v. National Labor Relations Board*, 156 U.S.App.D.C. 294, 480 F.2d 1186 (1973).
   In that case we noted that two members of the Board had dissented. We concluded that the Board's order had been premised upon an erroneous construction of the Act where the Board had held that R. J. Smith Construction Company, Inc., had not violated the Act when it unilaterally changed existing wage rates at a time when it had a pre-hire contract with the Union. In the instant case, the Administrative Law Judge (ALJ) concluded that the Board should dismiss the complaint against the Union, but after the General Counsel had filed

exceptions to the decision of the ALJ, the case was submitted to a three-member panel of the Board which overruled the ALJ and found the Union guilty of an unfair labor practice by its picketing.

2. That contract contains no union-security clause and no checkoff provisions. We attach no significance to that fact despite a contrary view submitted by Board counsel at oral argument. The point had not been discussed in the Board's opinion nor asserted as a controlling factor. Obviously, we can affirm only on grounds which would comport with the Court's rulings in *SEC v. Chenery Corp.*, 332 U.S. 194, 196, 67 S.Ct. 1575, 1577, 91 L.Ed. 1995, 1999 (1947) and *Burlington Truck Lines v. United States*, 371 U.S. 156, 168–69, 83 S.Ct. 239, 245–246, 9 L.Ed.2d 207, 215–216 (1962).
   We do not accept the Board's thus restated repudiation of *Local No. 150*, *supra*, note 1, where we specifically ruled contrary to the

The Union did not then or thereafter represent or claim to represent a majority of Higdon Construction's employees. Some employees were supplied by the Union at the Glenmore site, and wages and contributions to the welfare fund were paid for them in accordance with the contract.

Gerald J. Higdon [3] in July 1973 caused to be created the Higdon Contracting Company (hereinafter, Higdon Contracting) which had bid successfully on nonunion iron work of W. R. Grace Co. at Owensboro, Kentucky, and of Barmet Industries, Inc. at Rockport, Indiana. Higdon *Contracting* was the charging party in the proceedings under consideration.

In January 1974 after construction was commenced at the W. R. Grace jobsite, the Union began, and from time to time thereafter until March 1974 continued, to picket with picket signs carrying the legend:

Higdon Construction Company is in violation of the agreement of the Iron Workers Local No. 103.

Although Higdon could have filed a petition seeking an election, it did not do so, and neither did Local 103. Instead, it seemed clear enough to the Administrative Law Judge, that Higdon had sought to proceed at the Grace jobsite with nonunion labor and in disregard of the pre-hire agreement with the Local. The Board noted that when the Local's business representative sought to sign up the Company, Gerald J. Higdon took the position that so to act "would defeat the purpose I had started out to do . . . ." The Board in its Decision and Order specifically recognized that Higdon Contracting had been formed in July 1973 to perform nonunion ironwork jobs.

Board's position. *See* 156 U.S.App.D.C. at 298 & n.7, 480 F.2d at 1190 & n.7.

3. The Board in its opinion tells us:

Gerald J. Higdon is the sole stockowner of both Higdon Contracting and Higdon Construction and the president of both companies. His son is secretary-treasurer of both companies. The directors are the same. Higdon Construction, which owns all the equipment, leases the equipment to Higdon Contracting. Trucks used by Higdon Contracting on the Grace jobsite, discussed *infra*, bear the name of Higdon Construction. In

So it was that the Local commenced its picketing at the Grace jobsite on January 29, 1974, and continued off and on until March 1, 1974. A similar situation developed at the Barmet jobsite about February 20, 1974, and continued on various days up to March 20, 1974. In both locations the picket signs read as above set out.

Rejecting the views of the ALJ, the Board concluded that the Local's picketing had for its object the forcing of the Company to bargain with it without being currently certified and without having filed a petition for an election within a reasonable period of time. The Board's order directed the Local to cease and desist from picketing as a means of forcing or requiring the Company to recognize or bargain with the Local as the representative of its employees in violation of Section 8(b)(7)(C) of the Act.

I

The Board's Decision and Order here reverted to its own position in *Local No. 150,* supra note 1, involving *R. J. Smith Construction Co., Inc.,* 191 NLRB 693 (1971). The Board there had ruled that Section 8(f) does not protect the Union from inquiry into its majority status during the contract term. The Board here went on to reaffirm its previous holding, despite our opinion in *Local No. 150,* even as it noted as undisputed that the instant July 31, 1973, contract was a "prehire agreement lawfully executed under Section 8(f) of the Act prior to the establishment of the Respondent's majority status."

The Board declined to accept the appraisal by the ALJ who sought to give effect to

addition, an invoice dated March 8, 1974, indicates that material worth $96,788, for a building on the Rockport, Indiana, site, discussed *infra,* was charged to Higdon Construction. Higdon testified that Higdon Construction is the "only one that has any par value at all" and "it's one and the same companies. . . ."

The Board found that Higdon Construction and Higdon Contracting were actually a single integrated employer, and herein we may refer to the Company simply as Higdon, or occasionally as the Company.

this court's ruling in *Local No. 150.* The Board read the record here as containing evidence

> that the Employer sought to adhere to the contract for union work, such as the Glenmore contract, and to avoid it as to nonunion work by the creation of a second corporation.

Correctly identifying the position taken by the ALJ that the picket legend had published the truth, the Board continued:

> . . . He found that the target of Respondent's picketing was not to force or require the Employer to initially accept the Union as the bargaining representative since that had already been accomplished, but instead was to secure compliance with an existing contract, a permissible objective. We disagree.

## II

No substantial advantage will be achieved by further analysis of the details of the Board's effort here to justify its rejection of the holding of this court in *Local No. 150,* (*R. J. Smith*), or the post-hoc efforts of the Board's appellate counsel to distinguish the instant case. Rather, we may simply and summarily demonstrate the adamant position of the Board by setting forth *its own* explanation thus:

> For the Board to allow the Respondent to picket to enforce an 8(f) agreement if an employer decides to ignore it, as the Employer herein has done with respect to nonunion jobs, which Respondent could not enforce by means of obtaining an 8(a)(5) bargaining order, is to permit it to

do by indirection what it could not do directly and in effect nullify our decisions in *R. J. Smith* and its progeny that such contracts are voidable by either party if a union never thereafter obtains majority status. In these circumstances, we conclude that the picketing by Respondent to enforce a noneffective 8(f) contract was for initial recognitional purposes and therefore was proscribed by Section 8(b)(7)(C) of the Act.

It is our view that unions which are parties to pre-hire agreements have the right to complain of unfair labor practices, including alleged refusals by the employer to bargain collectively, before the union achieves a majority.[4] Conversely, an employer who has entered into a validly executed Section 8(f) pre-hire agreement may, after a reasonable period, seek a representation election to challenge an enduring minority union. The Company here could have taken that step but did not. It was the Company, Higdon, which committed an unfair labor practice when, of its own motion, it refused to bargain collectively with the Union. The principles so stated are applicable here and must control. *See Local No. 150 v. N. L. R. B., supra* note 1, 156 U.S.App.D.C. at 298, 299, 480 F.2d at 1190, 1191.

*Reversed and remanded.*

**4.** Board counsel in the Board's brief and at oral argument raised the possibility, nowhere adverted to in the Board's order, whether by way of reliance or otherwise, that this case is *a fortiori* controlled by *Dayton Typographical Union No. 57 v. N. L. R. B.,* 117 U.S.App.D.C. 91, 326 F.2d 634 (1963).

Congress earlier had recognized that what could become an unfair labor practice in employer-employee situations in general was not so to be seen respecting the *construction industry* where building projects are of relatively short duration and where labor agreements of the usual type could not practicably be given application. We noted as much in *Local No. 150 v. N. L. R. B., supra* note 1.

The union here is engaged in the construction industry and had been picketing to secure compliance with an existing contract valid under Section 8(f); the Typographical Union in *Dayton* was simply an uncertified but concededly majority union picketing to compel employer recognition. Here the Board summarily dismissed the Section 8(a)(5) charge which had been filed by Local 103. This action alone failed to conform to the thinking in *Dayton, cf.* the legislative history *generally,* and the discussion in *Dayton, supra,* 117 U.S.App.D.C. at 104, *et seq.,* 326 F.2d at 647, *et seq.*