CONTRACTORS, LABORERS, TEAMSTERS AND ENGINEERS HEALTH & WELFARE PLAN; Contractors, Laborers, Teamsters and Engineers Pension Plan; Omaha-Council Bluffs Laborers Local # 1140 Holiday Trust; Laborers Training Fund; and Construction and General Laborers Union, Local No. 1140, Plaintiffs,

v.

ASSOCIATED WRECKING COMPANY, a Nebraska Corporation, Defendant.

Civ. No. 77-0-248.

United States District Court, D. Nebraska.

Feb. 15, 1980.

David D. Weinberg, Omaha, Neb., for plaintiffs.

Michael W. Heavey, Omaha, Neb., for defendant.

## MEMORANDUM

DENNEY, District Judge.

This matter comes before the Court upon the defendant's motion for summary judgment, and defendant's alternative motion to compel answers to interrogatories [Filing # 8]. Briefs have been submitted and on February 4, 1980, a hearing was held before the Court.

This is an action brought under § 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185, to recover certain sums allegedly owed by the defendant to various trust funds, pursuant to an agreement dated June 9, 1975. The parties agree that the agreement in question is a "pre-hire agreement" authorized by § 8(f) of the Act, 29 U.S.C. § 158(f), which provides in pertinent part as follows:

> It shall not be an unfair labor practice under subsections (a) and (b) of this section for an employer engaged primarily in the building and construction industry to make an agreement covering employ-ees engaged (or who, upon their employment, will be engaged) in the building and construction industry with a labor organization of which building and construction employees are members . . because (1) the majority status of such labor organization has not been established under the provisions of section 159 of this title prior to the making of such agreement . . . *Provided further,* That any agreement which would be invalid, but for clause (1) of this subsection, shall not be a bar to a petition filed pursuant to section 159(c) or 159(e) of this title.

29 U.S.C. § 158(f).

The defendant's primary contention is that, since the plaintiff union never achieved majority support among the defendant's employees, the § 8(f) agreement sued upon is unenforceable. In support of this contention, the defendant relies heavily on the recent Supreme Court decision in *NLRB v. Iron Workers Local 103,* 434 U.S. 335, 98 S.Ct. 651, 54 L.Ed.2d 586 (1978).

In *Local 103,* Higdon Construction Co. and Local 103 entered into a pre-hire agreement, obliging Higdon to abide by the terms of the multi-employer understanding between Local 103 and the Tri-State Iron Workers Employers Association, Inc. At about the same time, Higdon Contracting Company was formed for the express purpose of permitting the sole stockholder of both corporations, Gerald J. Higdon to continue to operate in disregard of the § 8(f) agreement and the multi-employer agreement. When the union was informed of this, it picketed two projects undertaken by Higdon Contracting Company. Local 103 had never represented a majority of the workers at either jobsite and, although it was free to do so, it did not petition for a representation election.

After thirty days of picketing, Higdon Contracting Company filed an unfair labor practice charge with the Regional Director of the National Labor Relations Board [Board] alleging that Local 103 was violating § 8(b)(7) of the Act, 29 U.S.C. § 158(b)(7). Section 8(b)(7) makes it an

unlawful labor practice for an uncertified union to picket for more than thirty days for the purpose of forcing an employer to recognize the union as a bargaining representative of his employers, unless a petition for an election has been filed within that period.

At the outset, the Administrative Law Judge determined that Higdon Contracting Company was the alter ego of Higdon Construction Company and was thus bound by the pre-hire agreement. He then concluded that Local 103's picketing did not constitute an unfair labor practice. The purpose of the picketing was not to obtain recognition in violation of § 8(b)(7), but rather it was to secure compliance with an existing contract, the § 8(f) agreement.

This finding was appealed to the Board and was reversed. In so doing, the Board wrote:

> In R. J. Smith Construction Co., Inc., the Board found that, although Section 8(f) of the Act clearly exempts a company and union from unfair labor practice liability for entering into a contract prior to establishment of the union as a majority representative, Section 8(f) does not protect the union from inquiry into its majority status during the contract term. The Board thus concluded that Section 8(f) only protects from illegality the preliminary contractual steps of a pre-hire agreement and that, where a union never thereafter obtains majority status, the company does not violate Section 8(a)(5) and (d) of the Act by refusing to continue the bargaining relationship established and by unilaterally changing terms and conditions of employment set forth in the contract. Since the Board found that the union had admittedly never attained majority status, it dismissed the refusal-to-bargain complaint.
>
> .     .     .     .     .     .
>
> From the foregoing, we conclude that the contract herein is an 8(f) contract and that no presumption of majority status attaches to it in the circumstances of this case. Accordingly, the duty of Higdon Construction and its alter ego, Higdon

Contracting, to honor the Employer's collective-bargaining agreement with Local 103 is limited by the nature of 8(f) agreements. Under the doctrine set out in the cases cited above, the Employer could have terminated the agreement with Local 103 for projects not yet underway. For the Board to allow the Respondent to picket to enforce an 8(f) agreement if an employer decides to ignore it, as the Employer herein has done with respect to nonunion jobs, which Respondent could not enforce by means of obtaining an 8(a)(5) bargaining order, is to permit it to do by indirection what it could not do directly and in effect nullify our decisions in R. J. Smith and its progeny that such contracts are voidable by either party if a union never thereafter obtains majority status. In these circumstances, we conclude that the picketing by Respondent to enforce a noneffective 8(f) contract was for initial recognitional purposes and therefore was prescribed by Section 8(b)(7)(C) of the Act.

*Ironworkers, Local 103* (Higdon Contracting Co.), 88 LRRM 1067, 1068, 1069 (1975).

The Board's holding was, in essence, that a § 8(f) agreement is "noneffective", and thus unenforceable if the union never thereafter obtains majority status, and that, therefore, the employer may freely decide to ignore it until such time as majority status is obtained.

Local 103 sought review in the United States Court of Appeals for the District of Columbia. The Appeals court set aside the Board's order, stating as follows:

> It is our view that unions which are parties to pre-hire agreements have the right to complain of unfair labor practices, including alleged refusals by the employer to bargain collectively, before the union achieves a majority. Conversely, an employer who has entered into a validly executed Section 8(f) pre-hire agreement may, after a reasonable period, seek a representation election to challenge an enduring minority union. The Company here could have taken that step but did not. It was the Company, Higdon, which

committed an unfair labor practice when, of its own motion, it refused to bargain collectively with the Union. The principles so stated are applicable here and must control. *See Local No. 150 v. N.L.R.B., supra* note 1, 156 U.S.App.D.C. [294] at 298, 299, 480 F.2d [1186] at 1190, 1191. *Iron Workers, Local 103 v. NLRB*, 175 U.S.App.D.C. 259, 262, 535 F.2d 87, 90 (D.C.Cir.1976).

The case was then appealed to the Supreme Court, which reversed the decision of the Court of Appeals and reinstated the Order of the Board. In a well reasoned opinion, the court held that a § 8(f) agreement was unenforceable until such time as the union achieves majority status.

The Union argues that the Board's position permitting an employer to repudiate a pre-hire agreement until the union attains majority support renders the contract for all practical purposes unenforceable, assertedly contrary to this Court's decision in *Retail Clerks v. Lion Dry Goods, Inc.*, 369 U.S. 17 [82 S.Ct. 541, 7 L.Ed.2d 503] (1962). There, the Court's opinion recognized that § 301 of the National Labor Relations Act confers jurisdiction on the federal courts to entertain suits on contracts between an employer and a minority union, as well as those with majority-designated collective-bargaining agents. Section 8(f) contracts were noted as being in this category. The Court was nevertheless speaking to an issue of jurisdiction. That a court has jurisdiction to consider a suit on a particular contract does not suggest that the contract is enforceable. It would not be inconsistent with *Lion Dry Goods* for a court to hold that the union's majority standing is subject to litigation in a § 301 suit to enforce a § 8(f) contract, just as it is in a § 8(a)(5) unfair labor practice proceeding, and that absent a showing that the union is the majority's chosen instrument, the contract is unenforceable. It is also clear from what has already been said, that the decision here is not inconsistent with *Sullivan Electric Co.*, 146 N.L.R.B. 1086 (1964). That case merely permits picketing to enforce contracts with a union actually representing a majority of the employees in the unit. Here, the union did not represent the majority, and in picketing to enforce the pre-hire agreement, it sought the privileges of a majority representative. The conclusion that § 8(b)(7) was violated is legally defensible and factually acceptable.

*NLRB v. Iron Workers, Local 103, supra*, 434 U.S. at 351–52, 98 S.Ct. at 661.

■ Thus, in light of the Supreme Court's decision in *Local 103*, it is clear that a § 8(f) agreement cannot be enforced, and can be unilaterally ignored or abrogated by the employer, until such time as the union achieves majority status in the relevant unit. While § 8(f) permits an employer in the construction industry to execute an agreement with a union which has not yet achieved majority status, such agreement, as viewed by the Board, "is merely a preliminary step that contemplates further action for the development of a full bargaining relationship." *Ruttmann Construction Co.*, 191 NLRB 701, 702 (1971). The employer's duty to honor the § 8(f) agreement is still contingent upon the union achieving majority support at the various construction sites. *NLRB v. Iron Workers, Local 103, supra*, 434 U.S. at 345, 98 S.Ct. at 657.

■ The plaintiffs, nevertheless, contend that the *Local 103* decision should not apply to an action brought to enforce a § 8 (f) agreement under § 301 of the Act. Instead, they contend that the Local 103 decision should be read as applying solely to those cases involving recognitional picketing under § 8 (b) (7) or refusal to bargain under § 8 (b) (5), 29 U.S.C. § 158 (b) (5). In support, they rely on the cases of *Retail Clerks v. Lion Dry Goods, Inc.*, 369 U.S. 17, 82 S.Ct. 541, 7 L.Ed.2d 503 (1962) and *Drivers and Helpers, Local 696 v. Grosshans & Petersen, Inc.*, 209 F.Supp. 164 (D.Kan. 1962).

■ However, the passage from the *Local 103* decision set forth above clearly indicates that the plaintiffs' reliance on the *Lion Dry Goods* and *Grosshans & Petersen*

586

cases is misplaced. Unlike here, the courts in both those decisions were essentially dealing with an issue of jurisdiction. Obviously, the resolution of jurisdictional questions is not determinative of questions going to the merits. *See Orange Belt Dis. Council of Painters v. W. E. Stubblefield & Sons,* 437 F.2d 754, 756 (9th Cir. 1971). *Local 103* makes clear that although a court has jurisdiction to entertain a suit to enforce a § 8(f) agreement, this does not necessarily suggest that such agreement is enforceable. The question of a union's majority status to enforce the § 8(f) agreement must still be determined. That such questions may be litigated in a § 301 suit is clearly established by the *Local 103* decision. *NLRB v. Iron Workers, Local 103, supra,* 434 U.S. at 351–52, 98 S.Ct. at 660–61.[1]

Additionally, the plaintiffs assert that the defendant may not raise a defense based on a lack of majority representation against the plaintiffs' Health, Welfare and Pension Plans. In support, the plaintiffs cite various cases in which the courts refused to allow defenses against the collective bargaining agreement to be asserted by the employer in a suit brought by health, welfare and pension trustees. [Plaintiffs' memorandum brief at 4–9].

However, the Court is again of the opinion that the cases cited by the plaintiffs are inapplicable. None of these cases involved a § 8(f) agreement. Instead, most of them dealt with traditional contract defenses to the enforcement of a collective bargaining agreement. *See, e. g., Lewis v. Benedict Coal Co.,* 361 U.S. 459, 80 S.Ct. 489, 4 L.Ed.2d 442 (1960) (breach of contract); *Lewis v. Mill Ridge Coals, Inc.,* 298 F.2d 552 (6th Cir. 1962) (lack of consideration); *Boyle v. North Atlantic Coal Co.,* 331 F.Supp. 1107 (W.D.Pa.1971) (lack of consideration); *Lewis v. Harcliff Coal Co.,* 237 F.Supp. 6 (W.D.Pa.1965) (fraud, duress, lack

of consideration, breach of contract, novation, accord and satisfaction, etc. . . . .) In these cases, the courts found that the raising of such defenses against the trustees would be contrary to the policy considerations involved therein.

Here, the defendant is not raising traditional contract defenses to challenge the validity of a collective bargaining agreement. Rather, the defendant is contending that the § 8(f) agreement is not binding because majority status was never achieved. That the defendant may raise this contention before this Court is clearly established by the *Local 301* decision. Indeed, by raising this contention, the statutory policy that a union should not attempt to act as the collective-bargaining agent for all unit employees, and may not be recognized as such, unless it is the representative of the majority of the employees in the unit, is furthered. *See* 29 U.S.C. §§ 157, 159(a).

Moreover, in *Lewis v. Splashdam By-Products Co.,* 233 F.Supp. 47 (W.D.Pa.1964), the lone case cited by the plaintiffs in which the defense of a lack of majority status was raised, the court never reached the question of whether the defense was viable. In *Splashdam By-Products,* the union fund trustees brought suit to recover certain payments allegedly due under the terms of a collective bargaining agreement executed between the defendant, a mining corporation, and the United Mine Workers of America, representing defendant's employees.

The defendant challenged the validity of the agreement on the ground that at the time the agreement was executed the union did not represent a majority of the employees. However, since this agreement was not covered by § 8(f), the court was faced with an unfair labor practice question. Significantly the court found that it was without jurisdiction to consider the unfair labor

1. This Court notes that in a case decided since *Local 103*, the United States District Court for the Eastern District of Virginia narrowly read the *Local 103* decision as limited to the question of whether picketing was an unlawful labor practice. *Eastern Dist. Council v. Blake*

*Constr. Co.,* 457 F.Supp. 825, 828, 829 (E.D.Va. 1978). This Court, however, is convinced that the language contained in *Local 103*, as discussed above, does not support the *Blake* court's reading of *Local 103*.

practice claim. Consequently, the court never reached the question of whether an employer may assert a defense based on a lack of majority representation in a suit brought by union fund trustees. *Lewis v. Splashdam By-Products Co., supra,* 233 F.Supp. at 50–51.

By contrast, the agreement challenged herein is a § 8(f) agreement. There is no unfair labor practice question before this Court. The sole question before this Court involves the majority status of the plaintiff union. As has been repeatedly shown, this question may be considered by the Court. Accordingly, the foregoing discussion makes clear that the *Splashdam By-Products* case is inapposite and does not support the plaintiffs' contention that the defense of a lack of majority status may not be asserted in this case.

In sum, the Court finds that the *Local 103* decision is controlling herein. Therefore, absent a showing of majority status, the agreement sued upon is unenforceable.

■ Turning to the record in this case, it is clear that the plaintiffs have failed to make the requisite showing. The uncontroverted affidavit of Robert Hrock, the defendant's president, indicates that, while the defendant has employed some employees of the type covered by the collective bargaining agreements referred to in the § 8(f) agreement here in question, at no time have a majority of such employees elected or chosen the plaintiff union to act as their collective bargaining representative. This being the case, the Court finds, in light of the *Local 103* decision, that the § 8(f) agreement in question is unenforceable against the defendant and that the defendant is entitled to summary judgment.