**CENTRAL STATES, SOUTHWEST AND SOUTHEAST AREAS PENSION FUND and John E. Dwyer, Plaintiffs,**

**v.**

**GRATIOT CENTRAL OIL & GAS SERVICE, INC., a Michigan Corporation, Defendant.**

**No. K 79–23.**

United States District Court, W. D. Michigan, S. D.

Feb. 24, 1981.

---

Russell N. Luplow, Diana L. S. Peters, Charles Taunt (of counsel), Bloomfield Hills, Mich., for plaintiffs.

Thomas J. McNamara, Grand Rapids, Mich., for defendant.

## OPINION

ENSLEN, District Judge.

This action comes before the Court on Plaintiffs' Motion to Add Ray Molder, Inc. (Molder) and A & C Carriers (A & C) as Defendants. Plaintiff, a tax exempt multiemployer benefit plan, and its Executive Director have brought suit to collect alleged delinquent pension contributions accruing from December 1973. Believing that the proposed additional Defendants are signatories to the Central States Area Tank Truck collective bargaining agreements, Plaintiffs contend that these Defendants are liable as sureties. In particular the Plaintiffs urge that the proposed Defendants were lessors of certain operating authority, and assumed liability under Article I, Section 1.3 for unpaid pension contributions to Plaintiffs in the event the lessee failed to pay Plaintiffs. Plaintiffs reason that these proposed Defendants are proper parties to the litigation, and should be added as Party Defendants pursuant to Federal Rule of Civil Procedure 21.

Defendant Gratiot Central Oil & Gas Service, Inc. (Gratiot) objects to the joinder of these additional Defendants. Defendant Gratiot reasons that, even assuming the proposed Defendants were parties to the collective bargaining agreement, and that they leased operating authority to Gratiot, joinder is inappropriate because the Plaintiffs claim is a claim of breach of the collective bargaining agreement, which is subject to mandatory grievance procedure culminating in arbitration. Absent the exhaustion of contractual remedies, Defendant Gratiot contends that Plaintiffs may not bring this action against Molder and A & C. This proposition is buttressed by reference to the traditional authorities concerning labor management arbitration, including the *Steel Workers Trilogy, United Steelworkers v. American Manufacturing Company*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers v. Warrior & Gulf Navigation Company*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); and *United Steelworkers v. Enterprise Wheel & Car Corporation*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); *Republic Steel Corporation v. Maddox*, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965), and *Gateway Coal Company v. United Mine Workers*, 414 U.S. 368, 94 S.Ct. 629, 38 L.Ed.2d 583 (1974).

Plaintiffs counter by arguing that the language of this collective bargaining agreement does not require the trust fund to comply with the grievance procedure; that the trust fund is not a party to the

agreement, and as a third party beneficiary, need not proceed to arbitration; and finally that trustees have independent collection rights under ERISA 29 U.S.C. § 1102.

### Interpretation of Contract's Arbitration Clause

■ Plaintiffs do not contest that *United Steelworkers v. Warrior & Gulf*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960) formulated a rule of contract construction amounting to a presumption of arbitrability. Plaintiffs point out, however, that this presumption may be rebutted. The Court agrees that the rebuttal may eminate from the arbitration clause, or from other provisions in the contract.

In the absence of *any express provision* excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail, particularly where, as here the exclusion clause is vague and the arbitration clause is quite broad. (*Id.* at 584–585, 80 S.Ct. at 1354, emphasis added)

■ The breadth of the arbitration clause in this case is evident from the first sentence in:

ARTICLE 8—Grievance Machinery and Union Liability Section 8.1:

The Union and the Employer agree that there shall be no strike, lock-out, tie-up, for legal proceedings without first urging all possible means of a settlement, as provided for in this Agreement, of *any controversy* which might arise. (Emphasis added)

Plaintiffs argue that this provision must be read in the context of an agreement between only the Employer and the Union while recognizing that the clause is directed toward preventing work stoppages that are within the control of these two parties. Plaintiffs further argue that the apparent all inclusive nature of the arbitration provisions are rebutted in Section 3 of Article 8 which provides:

*Notwithstanding anything herein contained*, it is agreed that in the event any Employer is delinquent at the end of a period in the payment of his contribution to the Health and Welfare or Pension Fund or Funds, created under this Contract, in accordance with the rules and regulations of the Trustees of such Funds, after the proper official of the Local Union has given seventy-two (72) hours' notice to the Employer of such delinquency in health and welfare or pension payments, the employees or their representatives shall have the right to take *such action as may be necessary* until such delinquent payments are made, and it is further agreed that in the event such action is taken, the Employer shall be responsible to the employees for losses resulting therefrom. (Emphasis added)

According to this Section, even if the Trustee's right of action is derived from the union, there is no proscription from taking "such action as may be necessary", which presumably would include institution of legal proceedings. Article 29, referring specifically to pension contributions, corroborates this interpretation providing:

Action for delinquent contributions may be instituted by either the Local Union, the Area Conference or the Trustees. Employers who are delinquent must also pay all attorney's fees and costs of collections.

By the execution of this agreement the Employer authorizes the Employers Association who are signatories to similar collective bargaining agreements signed with Teamster Unions, to enter into appropriate trust agreements necessary for the administration of such fund, and to designate the Employer trustees under such trust agreements, hereby waiving all notice thereof and ratifying all actions taken or to be taken by such trustees within the scope of their authority.

The inclusion of "action" initiated by trustees despite the grievance procedure limitation to Employer and union, as well as the broad phrase "such action as may be necessary", obviously refers to recourses distinct from filing a grievance.

Even if there were some doubt as to the appropriate construction of "such action", the trust agreement for Central States, which was incorporated by reference into the collective bargaining agreement (Article 29), expressly provides that the trustees may institute law suits:

The Trustees, or such committee of the Trustees as the Board of Trustees shall appoint, or the Executive Director when directed by such committee or by the Trustees, shall have the *power* to demand and collect the contributions of the Employers to the Fund. Said Board of Trustees shall take such *steps, including the institution and prosecution* of, and intervention in, any *legal proceedings* as the Trustees in their discretion deem in the best interest of the Fund to effectuate the collection or preservation of contributions or other amounts, which may be owed to the Trust Fund, without prejudice, however, to the rights of the Union to take whatever steps may be deemed necessary for such purpose. Article III, Section 4. (Emphasis added)

The amalgam of the above factors presents the requisite "positive assurance" that the trustees collection efforts were not intended to fall within the scope of the arbitration clause.

### Third Party Beneficiary Status and Effect of ERISA Independent Action Provisions

In light of the foregoing conclusion that the arbitration clause was not meant to encompass collection actions by trustees, it would not be necessary to decide whether a trustee of a fund, not privy to the agreement, is nevertheless bound by its provisions; or whether ERISA supercedes, or modifies, the parties' agreement to arbitrate trust matters. In light of the parties' full exploration of these issues, the Court chooses to discuss these as alternate bases for its decision.

Assuming that the arbitration clause requires submission of disputes over delinquent trust payments, Defendant Gratiot urges the Court to find the trust fund a third party beneficiary, whose rights are subject to any defenses that would be available to the promisor employer. In support of this position Defendant cites *IBEL, Local 308 v. Daves Electric Service, Inc.*, 382 F.Supp. 427 (MD Fla 1974) and *Central States v. Howard Martin*, 625 F.2d 171 (CA 7 1980). In *Davis Electric, supra*, the court held:

The defense of failure to arbitrate raised by a promisor in a commercial third party beneficiary contract containing at its inception, a broad arbitration clause would be good against the beneficiary.

In so holding the court distinguished *Lewis v. Benedict Coal Corporation*, 361 U.S. 459, 80 S.Ct. 489, 4 L.Ed.2d 442 (1960), which held that a mine owner might not assert the union's breaches as a defense to the trustee's suit. The District Court determined that there were several unique reasons why the Supreme Court declined to apply commercial third party beneficiary contract principles in *Lewis, supra*, and concluded that:

The reasons offered by the court in *Lewis* for rejecting the use of a substantive defense or counterclaim in an action by the trustees are not at all applicable to the situation posed here—the use of the procedural defense of arbitration. Requiring arbitration, of course, will not subvert any rights. It will merely change the initial forum in which those rights are determined to the preferred forum as a matter of national labor policy and the selected forum by the terms of the agreement itself.

In *Howard Martin, supra*, the Court of Appeals for the Seventh Circuit held that the trustees were third party beneficiaries, and would be required to arbitrate. There the court distinguished *Lewis, supra*, stating that there had been presented no arbitration clause; nor were there specific questions as to interpretations of the agreement itself.

The Plaintiffs' find support for their position in District Court decisions which diametrically oppose the above authorities. In *Wishnick v. One Stop Food & Liquor Store,*

359 F.Supp. 239 (ND Ill 1973), the court explained its refusal to require arbitration in the following manner:

(4) The Trustees of a Welfare and/or Pension Trust Fund established under a collective bargaining agreement are not typical third-party beneficiaries of such agreements. The Trustees of such funds are not parties to such agreements and are not subject to each and every duty and obligation arising under the agreement.

(5) Further, Congress, in enacting Section 302 of the Labor Management Relations Act (29 USC § 186) intended that Welfare and Pension Funds established in accordance with that section would be independent of exclusive control by the union. Consequently, the failure of an employer to make contributions as required by an agreement is not an arbitrable dispute in the absence of a specific provision in the agreement requiring the Trustees to submit their claims to the arbitration procedure. See *Lewis v. Harcliff Coal Company, Inc., et al.*, 3 NB PC 146 (WD Pa 1964).

Since the Welfare Fund in the instant action was established in accordance with 29 USC § 186, it is the opinion of this Court that dismissal of the instant action in order to permit the union and the employers to arbitrate the right of the Trustees would be contrary to the intent of Congress in establishing independent Welfare Funds. If the parties to the collective bargaining agreement (the employers and union) intended that claims for unpaid contributions to the Welfare Fund should be subject to the arbitration provision of the agreement, they should have so stated in unequivocal language. *Lewis v. Benedict Coal Corporation*, 361 U.S. 459, 80 S.Ct. 489, 4 L.Ed.2d 442 (1960). Since the parties have not so stated in the agreement, it is the opinion of this Court that the defendants' contention that the union should first exhaust its contractual remedy of arbitration before this action can be maintained is without merit.

See also *Owen v. One Stop Food & Liquor Store, Inc.*, 359 F.Supp. 243 (ND Ill 1973); *Boyle v. North Atlantic Coal Corporation*, 331 F.Supp. 1107 (WD Pa 1971); and *Todd v. Casemakers, Inc.*, 425 F.Supp. 1375 (ND Ill 1977).

This Court is not persuaded by Defendant's interpretation of *Lewis, supra*, limiting the independence of third party trustee actions to substantive areas. Nor is this Court persuaded that the distinction in *Howard Martin, supra*, between disputes over delinquent payments, and cases turning on which of the disputed workers were covered by the contract is either workable or a fair representation of the parties' intent.

The resolution to the issue of defenses available against third party beneficiary claims is similar to that reached in determining the scope of the arbitration clause. Labor policy is secondary to the intentions of the parties. This is evident from the holding of *Lewis, supra*:

(W)e hold that the parties to a collective bargaining agreement *must express their meaning in unequivocal words before they can be said to have agreed* that the union's breaches of its promises should give rise to a defense against the duty assumed by an employer to contribute to a welfare fund meeting the requirements of Section 302(c)(5). (Emphasis supplied)

There, the court, after examining the parties use of language in the collective bargaining agreement, determined that "their clear import is that the parties meant that the duty to pay royalty should arise on the production of coal independent of the union's performance". (*Id.* at 466, 80 S.Ct. at 493) The court then proceeds to explain the significance of the trust to the interpretation of their agreement:

It is a commonplace of modern industrial relations for employers to provide security for employees and their families to enable them to meet problems... In a very real sense Benedict's interest in the soundness of the fund and its management is in no way less than that of the promisee union. This of itself cautions

against reliance upon language which does not explicitly provide that the parties contracted to protect Benedict by allowing the company to set off its damages against its royalty obligations. (*Id.* at 468, 80 S.Ct. at 494)

Not unlike the issue of the scope of arbitration clause, the underlying question, regarding third party defenses, is what was the agreement between the parties, or what is one to presume in the absence of an explicit agreement. The Supreme Court has directed that I am not to automatically presume that the primary parties have agreed that a third party beneficiary trustee is subject to the defenses of the promisee, notwithstanding that there is contrary to the assumption in an ordinary commercial third party beneficiary contract.

Defendant argues that the rationale for this atypical treatment of a trustee is not present when only the procedural defense of arbitration is in issue. The Plaintiffs argue that the rationale is all the stronger in such an instance due to congressional intent that trustees exercise broad discretion, which is to be independent from the union (which is authorized to initiate arbitration). (ERISA 29 U.S.C. § 1001 et seq. Multiemployer Pension Plan Amendments of 1980, and the Labor Management Relations Act Section 302, 29 U.S.C. § 186).

At the very least these statutory provisions balance out the tendency to presume that parties agreed to allow trustees to shoulder the ordinary contractual defenses. At most, they would compel that the trustee be free from substantive or procedural defenses they have not been privy to adopting. Viewing the subject favorably to the Defendant, as evenly balanced, this Court is of the opinion that the language contained within the agreement indicates that the trust fund would not be subject to the arbitration clause; nor any of the other procedural defenses outside Section 29; nor would it be subject to the general substantive defenses the employer may be able to assert against the union.

In summary, the Plaintiffs' Motion to Add Molder and A & C as Defendants is granted pursuant to FRCP 21. The arbitration clause of the collective bargaining agreement does not require the trustee to submit such disputes to arbitration, nor does the overall scheme of the agreement subject trustees to the defenses properly asserted against the union.