Harry HUGE, C. W. Davis and Paul R. Dean, as Trustees of the United Mine Workers of America Health and Retirement Funds, Plaintiffs,

v.

Lawrence V. OVERLY, Individually, Defendant.

Civ. A. No. 75–869.

United States District Court, W. D. Pennsylvania.

Feb. 16, 1978.

Henry Gusky, Walter P. O'Connell, Plowman & Spiegel, Pittsburgh, Pa., for plaintiffs.

Scales & Shaw, Greensburg, Pa., for defendant.

## OPINION

DUMBAULD, District Judge.

Plaintiffs, trustees of the United Mine Workers of America Health and Retirement Funds, hereinafter sometimes referred to as plaintiff or the trust fund, is a pension plan organized pursuant to 29 U.S.C. § 186(c)(5).

It is required by 29 U.S.C. § 186(c)(5) that the trust fund be used "for the sole and exclusive benefit of the employees" and by 29 U.S.C. § 186(c)(5)(B) that "the detailed basis on which such payments are to be made [be] specified in a written agreement with the employer." [1] Any oral modification of such a written agreement would be invalid and contrary to public policy. *Lewis v. Seanor Coal Co.*, 382 F.2d 437, 441–44 (C.A.3, 1967).

The Supreme Court and numerous cases in this Court make clear that plaintiff is a fiduciary for the beneficiaries of the trust fund and constitutes a distinct and independent entity separate from the union. The union participates merely in the collective bargaining agreement with the employer by virtue of which the assets of the fund are generated out of payments which the employer in the contract with the union obligates himself to make.[2] *Lewis v. Benedict Coal Co.*, 361 U.S. 459, 469, 80 S.Ct. 489, 4 L.Ed.2d 442 (1960); *Lewis v. Harcliff Coal Co.*, 237 F.Supp. 6, 7 (W.D.Pa.1965); *Gomez v. Lewis*, 292 F.Supp. 560, 561 (W.D.Pa. 1968); *Boyle v. North Atlantic Coal Corp.*, 331 F.Supp. 1107, 1108 (W.D.Pa.1971); *Huge v. Old Home Manor*, 419 F.Supp. 1019, 1021 (W.D.Pa.1976); *Huge v. Kutsen-*

---

1. The Employee Retirement Income Security Act of September 2, 1974 (ERISA), 88 Stat. 825 *et seq.*, contains similar provisions. 29 U.S.C. § 1104(a)(1).

2. The now continuing coal strike, the longest in history, by preventing payments into the fund by producers on tonnage produced, is causing hardship to many pensioners because of lack of assets in the fund. At the same time, President Jimmy Carter's chief legislative triumph in Congress to date has been the enactment of the largest tax increase in history because of shortage of assets in the Social Security System.

*kow*, Civ. No. 76–904 [where Judge Knox granted judgment for plaintiffs on the pleadings]. Hence any defenses which may be available against the union are not available against the fund, which is a third-party beneficiary of the contract between employer and union. A similar situation is familiar in commercial law with respect to a bona fide purchaser of a negotiable note in good faith for value,. before maturity, and without notice.

The distinction between the union and the trust fund is one which defendant, an intractable individualist, can not or will not recognize. He repeatedly testified that "they are in the same boat." It was his habit to pay no attention to correspondence from the fund, but to throw it in the wastebasket.

■ The contracts of individual coal producers with the U.M.W.A. are in substance contracts of adhesion. The employer becomes party to a standard printed contract, which embodies the terms negotiated nationally. This agreement is entitled "National Bituminous Coal Wage Agreement of 1971 effective November 12, 1971." Hence it seems unlikely that the union would enter into a contract with a particular employer varying the standard terms; though of course it would be free legally to do so. But the common practice would have bearing upon the antecedent probability of any claim that variance existed in the case of a particular owner's agreement with the union, and the credibility of testimony tending to establish such variance.

Article II, section (d), of the contract signed by defendant provides:

As part of the consideration for this agreement, the Employers agree that this agreement covers the operation of all of the coal lands, coal producing and coal preparation facilities owned or held under lease by them, or any of them, or by any subsidiary or affiliate at the date of this agreement, or acquired during its term

which may hereafter (during the term of this agreement) be put into production or use. The Employers agree that they will not lease, license or contract out any coal lands, coal producing or coal preparation facilities for the purpose of avoiding application of this agreement or any section paragraph or clause thereof.[3]

Article XV, section (a), obligates the operator to furnish to the union and to the trust fund "a monthly statement showing the full amount due hereunder for all coal produced . . . from each of the several individual mines owned or operated by the said operators signatory hereto."

Article XV, section (d) provides:

If the Trustees determine that there is reasonable cause to question the accuracy of the sums paid under Section (a) of this Article or of any verification thereof made by an Employer for a given monthly or annual period, the Employer shall, upon written request by the Trustees, make available for inspection and/or copying at reasonable times and places to a representative or representatives of the Fund those records which are necessary to verify the accuracy of sums paid hereunder.

It is admitted by defendant in the pleadings that he executed the contract with the union. His testimony at the trial admits that he signed three copies of the document, and that of such copies those furnished to the union representative contained nothing on the signature page other than his signature, the figure 3 to identify the district, the date, and his name and address in print (not in his handwriting but written by the union representative).

■ However, on his own copy only, he testifies that he wrote the words "U. S. Steel Coal only" which appear on Defendant's Exhibit 1 above the date; and that he wrote these words before he signed his

---

**3.** It was doubtless to avoid charges of violation of the second sentence of this section that United States Steel Corporation insisted that defendant sign the agreement in order to strip coal from a tract leased from that corporation. Defendant's operations had theretofore been non-union.

name to the agreement.[4] Whether or not there was a "meeting of minds" or *consensus ad idem* in the subjective sense, contract law since the days of Holmes and Williston has accepted the objective standard.[5] Under accepted contract law defendant is bound by the standard printed contract which he signed. It would be a species of fraud were he to be able to shape his obligation to conform to a restriction not communicated to the other contracting party.

 Defendant made certain payments to the fund from time to time after signing the agreement. But he submitted no monthly statements as required by Article XV, section (a). The forms for such statements which were sent to him by the fund were among the incoming mail which he threw into the waste basket. He also testified that he paid no attention to oral requests for this information.

Ronald Mastrine testified that he performed an audit, as authorized by Article XV, section (d). He experienced difficulties by reason of the lack of certain necessary records.[6] Where sales invoices were missing, he calculated the tonnage from bank deposits or defendant's tax returns. No evidence was offered by defendant to show that the sales involved were made at a different price from that used in Mastrine's estimate, or that the comparable prices used by Mastrine were not correct. Mastrine's work papers show that he used estimated tonnage on only a small part of the tonnage sold. The Court accepts his audit as substantially adequate and accurate.

It shows royalty due of $25,493.30, with simple interest at 6% of $5626.43, or a total of $31,119.73 [Plaintiffs' Exhibit 2].

 In addition plaintiffs are entitled to attorney's fees. The affidavit of Walter P. O'Connell, Esquire, shows travel expenses of $257.65; and that of Henry Gusky claims $3,321, at an hourly rate of $67.50. The Court deems $2500 to be an adequate fee. Accordingly, judgment is entered against defendant Lawrence Overly and in favor of Harry Huge, C. W. Davis and Paul R. Dean, as Trustees of the United Mine Workers of America Health and Retirement Funds in the amount of $33,877.38, together with court costs.

This opinion shall be deemed to constitute the Court's findings of fact and conclusions of law.

---

4. The words "U S Steel Coal only" are in a different colored ink than used for defendant's signature, or for the parts written by the union representative. Defendant's explanation is that he always carries several pens in his pocket. Apart from defendant's own testimony there is no evidence as to when those words were written. Conceivably they could have been added *post litem motam*.

5. Samuel Williston, *A Treatise on the Law of Contracts* (3d ed. Jaeger, 1957) I, § 21, p. 42.

6. This lack of proper records is itself a violation of the contract. It also prevented defendant's own CPA from giving more than a disclaimer type certificate when he prepared Defendant's Exhibit 4. That exhibit shows only sales to one customer, Duquesne Light.