Barney E. CHAMPION, Sr., Plaintiff,

v.

William DAVIS, Paul Dean, and Harry Huge, Trustees of the United Mine Workers of America Welfare and Retirement Fund of 1950, Defendants.

Civ. A. No. 76–M–0864.

United States District Court,
N. D. Alabama, S. D.

Oct. 23, 1978.

William F. Prosch, Jr., Birmingham, Ala., for plaintiff.

William E. Mitch and Earl V. Brown, Jr., Cooper, Mitch & Crawford, Birmingham, Ala., Norman P. Goldberg and Bruce McKenzie, UMWA Health & Ret. Funds, Washington, D. C., for defendants.

## MEMORANDUM OPINION

McFADDEN, Chief Judge.

This cause came on to be tried by this court, sitting without a jury. This memorandum opinion is being issued in lieu of findings of fact and conclusions of law, pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

This court has jurisdiction pursuant to 28 U.S.C. § 1332.

Plaintiff claims that he, as a retired coal miner, was entitled to pension benefits from the United Mine Workers of America (U.M.W.A.) Health and Retirement Funds. Defendants are trustees of the U.M.W.A. 1950 Pension Trust, one of the four trust funds, collectively referred to as the U.M.W.A. Health and Retirement Funds, which were created by the National Bituminous Coal Wage Agreement of 1974 to continue the U.M.W.A. Welfare and Retirement Fund of 1950. Since the 1950 Pension Trust (i. e., the U.M.W.A. Health and Retirement Funds) is successor to the 1950 Fund, it is legally insignificant that plaintiff actually applied to the 1950 Fund.

The scope of judicial review in this case is limited to a determination of whether the Trustees' decision had a substantial basis in the evidence as a whole or was otherwise not arbitrary and capricious. *E. g., Farley v. Huge*, C.A. No. 76–M–1406–S (N.D.Ala. Sept. 27, 1977). The court is of the opinion, on the basis of the evidence presented to the Trustees before this action was instituted and on the expanded record as presented to this court, that denial of pension benefits to the plaintiff was not arbitrary and capricious and was supported by a substantial basis in the evidence.

While there appears to be disagreement between counsel regarding the appropriate eligibility standards—Resolutions 83 and 90, U.M.W.A. 1950 Pension Plan, and the settlement agreement in *Blankenship v. Boyle*, Consolidated Civil Actions No. 2186–69 and 2350–69 (D.D.C. 1973), the crucial question, regardless of which standard is applied, is whether plaintiff has 20 years of classified service, 5 years of which are classified signatory service after May 28, 1946. *Blankenship* incorporated portions of Resolution 83 of the 1950 Fund, and the court is of the opinion that *Blankenship* sets out the pertinent criteria. The rulings and resolutions need only be used to define the terms in this question. As defendants' brief points out, *Blankenship* criteria (with corresponding portions of Resolution 83) concerning signatory requirements are less restrictive than those under the other plans; for that reason, *Blankenship* and the corresponding relevant portions of Resolution 83 will be discussed in this opinion.

Resolution 83 defines classified service and signatory service. A year of classified service is defined in paragraph II A of Resolution No. 83. A year of signatory service as it is pertinent here is defined as "a year of service as defined in paragraph II A 1(a)(1) [i. e., classified service] during which an applicant worked, after May 28, 1946, as an employee in a classified job for an employer then signatory to the bituminous coal wage agreement then in effect." Resolution No. 83, II Cl. (a).

Plaintiff's application for a pension was denied because he lacked 20 years of classified service, including at least 5 years of signatory service after May 28, 1946, and upheld on appeal. It is unclear exactly how

much credit plaintiff got for classified service before May 28, 1946, but in any event it was at least fifteen, the maximum plaintiff can effectually get credit for before May 28, 1946 toward the required twenty years. The denial was for lack of 5 years of signatory classified service after May 28, 1946. Plaintiff got three years credit for signatory service for the period from 1946 through 1948. Plaintiff does not claim credit for the period beginning after 1953. The narrow issue is whether plaintiff had 2 years of signatory service between 1949 and 1953, a period during which the Funds gave plaintiff no signatory credit. The Synopsis of Hearing Record shows that plaintiff was not given credit for 1949 because no earnings were reported for that year. Credit was denied for the period from 1950 through 1953 because

> [S]everal men have told us you worked in a classified occupation, some told us otherwise. You have told us you did not obtain overtime, were not in the local union, and did not have a Health Services card. Let me emphasize that these last two factors do not constitute eligibility, however, they tend to substantiate that one worked in a classified occupation. You told us you served on a daily basis, that you made any decisions that surfaced sporatically. If something happened in the mines, you made the final judgment. The people are split on their opinions. Many felt you were a foreman.

Beginning in 1948, plaintiff became a partner with W. W. Findley in the Findley-Champion Coal Company. In 1950, Findley-Champion incorporated, with plaintiff as its president. It appears that plaintiff contributed no capital either to the partnership or the corporation, but plaintiff did clearly contribute services. Plaintiff maintains that both of these business organizations were "in name only," and that the partnership and the corporation were answerable to Shaw-Tutwiler Coal Co. The parties stipulated that both Shaw-Tutwiler and Findley-Champion were signatory to the National Bituminous Coal Wage Agreements during the period in question, i. e., from 1948 through at least part of 1954.

Although there was a definite connection between Shaw-Tutwiler and Findley-Champion, as will be apparent later in this opinion, the court declines to disregard the business forms which Findley-Champion used to its advantage and which Mr. Champion now attempts to repudiate. At the very least, a finding that plaintiff did business in these forms was not arbitrary and capricious.

In simple terms, plaintiff is not entitled to signatory credit between 1949 and 1953 because he had a supervisory position as a miner and because he was directly connected with the ownership, operation, or management of the mine. The evidence both in the Funds' file and at trial supports the proposition that plaintiff was a foreman. Plaintiff was therefore in a job which is not classified. *Warren v. Davis*, 95 L.R.R.M. 2025 (E.D.Okl.1977); *see* U.M.W.A. National Bituminous Coal Wage Agreements of 1947 and 1950 (exemption for supervisor). *Warren v. Davis* notes that the following criteria are used to determine whether the work was classified.

> (a) Whether the applicant had a supervisory job classification, and specifically a classification such as "Mine Foreman" or "Assistant Mine Foreman", the job classifications included in the exemption clause of the agreement;
>
> (b) Whether the applicant was salaried;
>
> (c) Whether the applicant was a union member;
>
> (d) Whether the applicant held a union health card;
>
> (e) The nature of work done by the applicant; and
>
> (f) The applicant's comparative rate of pay.

95 LRRM at 2027.

Applying the *Warren v. Davis* factors, the court is convinced that plaintiff's job was not classified. One factor alone would not necessarily lead to the conclusion that plaintiff was a foreman, but taken together they lead to that conclusion. First, a mine foreman was necessary. *See Alabama Code* tit. 26, § 72 (1958) [(1975) § 25–9–19]. Al-

though plaintiff classified himself as a fire boss, since there was no other foreman, plaintiff was by process of elimination the mine foreman. It was also possible for a mine foreman to act concurrently as fire boss. *See Alabama Code* tit. 26, § 166(5) (1958) [(1975) § 25–9–17]. It is pertinent that Mr. Findley, who was in business with plaintiff, first in a partnership and then in corporate form, was crippled and did not go down into the mines. Again, by process of elimination, it would have had to be plaintiff who had the authority to supervise the men working in the mines.

 Although there was evidence that plaintiff worked in the mine just like the other men, there is also specific evidence that plaintiff not only worked in the mine, but that he also was the foreman and supervisor of the men. It is undisputed that plaintiff was both a certified fire boss and a certified foreman during the period in question. Willie Woods' statement, which was in the file at the Hearing, says that plaintiff actually hired him. At the hearing, and in a statement made on January 29, 1976, plaintiff effectually admitted that he did some hiring. Plaintiff himself said at the Hearing, "I will admit I guess, that if a decision was made, I had to make it." The fact that plaintiff did production work along with supervisory work does not take him out of the supervisory non-classified area. *Miracle v. UMW Welfare Fund*, 86 L.R.R.M. 2600 (D.C.Cir.1974). Although plaintiff would have the court apply the exception in IV C(6) of the U.M.W.A. 1950 Pension Plan, that exception applies to one regularly employed in a classified job who may be a temporary supervisor, not to a permanent supervisor such as plaintiff. It appears that this exception may have applied to plaintiff when he was employed by Hinz Coal Company; plaintiff received credit for 1946–48 when he worked for Hinz.

Plaintiff stated that he was paid on a day rate. When plaintiff's earnings are compared with those of Roland Boothe, who was in the highest paid job classification (machine operator), it is clear that not only did plaintiff make more than Roland Boothe, but he also made round sums, indicating a salary. Plaintiff was not a union member, did not earn overtime, and had no health card. Although plaintiff said he was a fire boss, it is the opinion of the court that he did the work of a foreman. The Funds' Question and Answer Number 175 (Exhibit C to defendants' Answers to Interrogatories) shows that fire boss *per se* is not itself a classified job, although it may be so.

It is clear that the Trustees were not arbitrary and capricious in their implicit finding that plaintiff was a supervisor and that their finding had a substantial basis in fact. The weight of the evidence shows that although plaintiff did perform jobs other than that of the foreman, he was nevertheless the foreman. Taking all factors together, the court is convinced that plaintiff was the foreman or supervisor in the Findley-Champion mines.

Another basis for denying plaintiff's pension application is that plaintiff was directly involved in the ownership of the mine and accordingly cannot receive credit for that period. Resolutions 83 and 90. As previously noted, Resolution 83 is less stringent on this point, and will be applied here:

No credit for service shall be awarded applicant for any period in which he was directly connected with the ownership, operation or management of a mine; provided, however, that credit shall be awarded for any period in which applicant worked in a classified job in a signatory mine pursuant to an agreement to produce coal for a signatory coal company which was responsible for royalty payments to the Fund on such coal produced; and provided further that credit shall be awarded for any period in which applicant worked in a classified job as a member of a cooperative which shared profits and was signatory to the bituminous coal wage agreement then in effect, and applicant had no controlling interest in the operation of the mine.

The rationale behind this provision is that the Fund is for the benefit of employees and not employers. *See, Gomez v. Lewis*, 414 F.2d 1312 (3d Cir. 1969).

The first exception is the only one possibly pertinent since the second exception to this "ownership" section is clearly not applicable. Under this first exception, if Findley-Champion and Shaw-Tutwiler were both signatory and if Shaw-Tutwiler was responsible for royalty payments, then whether plaintiff was involved in ownership or not, he is still eligible for a pension. The information sheet labeled "Signatory Information Sheet" shows that Findley-Champion paid the royalties. The defendants' answers to interrogatories say this information is from U.M.W.A. records. The notes from the Funds conference with Mr. Champion on January 29, 1976, also show that Findley-Champion paid the royalties. In his supplemental answers to interrogatories, however, plaintiff states that Shaw-Tutwiler was responsible for the royalties. The August 19, 1975 statement by W. W. Findley says royalties were paid. It doesn't specifically say who paid them, but does say finances were handled by Shaw-Tutwiler. The August 15, 1975 statement of W. J. Shaw does not speak to the issues. Obviously, the Funds' action was not arbitrary and capricious, since the only evidence before them would not have even brought this exception into play. At trial, the plaintiff did not appear to be pursuing this exception.

Plaintiff was in charge of the mine, made more money than the other men and was an owner at least in name. He was not entitled to a pension because he was not an employee. Defendants were entitled to so find based on the evidence presented to them and the denial of pension rights was supported by substantial evidence and was not arbitrary and capricious.

Accordingly, judgment should be entered for defendants and against plaintiff, costs to be taxed to plaintiff.