Edward L. McHUGH, James C. McHugh, Gerard J. McHugh, Christina McHugh, individually and as Administratrix of the Estate of Robert C. McHugh, Deceased, McHugh Brothers Equipment Corporation, McHugh Brothers Crane Rentals, Inc.

v.

TEAMSTERS PENSION TRUST FUND OF PHILADELPHIA and Vicinity, Teamsters Health and Welfare Fund of Philadelphia and Vicinity, General Teamsters, Chauffeurs, Helpers and Yardmen, Local Union No. 470.

Civ. A. No. 84–2680.

United States District Court, E.D. Pennsylvania.

July 2, 1986.

Melvin A. Bank, Albert L. Becker, Philadelphia, Pa., for plaintiffs.

Sanford G. Rosenthal, Thomas W. Jennings, Sagot & Jennings, Philadelphia, Pa., for Teamsters Pension Trust Fund of Philadelphia and Vicinity and Teamsters Health and Welfare Fund of Philadelphia and Vicinity.

## OPINION

LUONGO, Chief Judge.

In 1983, defendant Teamsters Pension Trust Fund denied plaintiff Edward L. McHugh's application for early retirement benefits. Plaintiffs subsequently brought this action seeking a determination that Edward L., James, Gerard and Christina [1] McHugh are eligible to receive benefits from the Teamsters Pension Trust and Health and Welfare Funds. In the alternative, plaintiffs McHugh Brothers Equipment Corporation and McHugh Brothers Crane Rentals, Inc. seek reimbursement for all contributions made to the Funds on behalf of the individual plaintiffs. Presently before me are cross-motions for summary judgment filed by the plaintiffs and by the defendant Funds. For the reasons stated below, the Funds' motion for summary judgment will be granted and plaintiffs' motion will be denied.

### I. *Factual Background*

The parties have submitted over 100 exhibits in support of their motions. From those exhibits I have elicited the following

---

**1.** Christina McHugh seeks benefits as the surviving spouse of Robert C. McHugh, who died on May 15, 1982.

background facts, which I believe are not in serious dispute.[2]

Edward P. McHugh, the father of Edward L., James, Gerard and Robert McHugh, founded Bucks County Construction Company (Bucks County) in approximately 1928. In 1968, Bucks County was succeeded by McHugh Brothers Crane Rentals, Inc. (Crane Rentals). McHugh Brothers Equipment Corporation (Equipment Corporation) and McHugh Brothers Heavy Hauling (Heavy Hauling) are wholly owned subsidiaries of Crane Rentals. Edward L., James, Gerard and Robert McHugh, together with their sister Adelaide Mary McHugh, acquired ownership of the various McHugh entities by inheritance from their parents. They have held stock in one or more McHugh companies since 1968. At least since 1973, each of the McHughs has owned a 20% interest in Crane Rentals, the parent company.

Edward L. McHugh has worked for the McHugh companies since 1945 and has been the maintenance shop supervisor since 1962. His salary was paid by Bucks County until 1968 and since then has been paid by Equipment Corporation. He has been Vice-President and Director of one or more McHugh companies since 1969.

James McHugh has worked for the McHugh companies on a full-time basis since 1952. He has handled a variety of responsibilities, including field and office work, sales, and bidding and planning jobs. Since 1970, he has spent the majority of his time operating Heavy Hauling and the New Hope and Ivyland Railroad, which Heavy Hauling leases. Since 1976, he has also been responsible for the financial affairs of the McHugh companies. James McHugh was Secretary/Treasurer and Director of Bucks County from 1961 until 1968 and of Crane Rentals and Equipment Corporation from 1968 or 1969 to 1973. He has been President of Heavy Hauling since 1971.

Gerard McHugh started working for Bucks County in 1962. He acted as office manager from 1967 to 1971, first for Bucks County and then for Crane Rentals. He went to work for Equipment Corporation in 1971. His responsibilities included inspecting cranes for the Department of Labor, doing electrical work, taking care of billing and paperwork relating to vehicle licenses, and driving the companies' 96 wheel trailer. At various times between 1969 or 1970 and 1982, Gerard McHugh has acted as Assistant Secretary/Treasurer or Vice-President and Director of Equipment Corporation and Crane Rentals. Since May 17, 1982 he has been the President of the two companies.

Robert McHugh began to work for a McHugh company at some time before 1962. At Bucks County he dispatched equipment. After 1968, he worked as operations manager of one or more McHugh companies. Robert McHugh was President and Director of one or more McHugh companies from 1969 until his death in 1982.

In the course of their work for the McHugh companies, all of the McHugh brothers have at various times and to various extents driven trucks and performed other teamster work. In 1964, they joined General Teamsters, Chauffeurs, Helpers and Yardmen, Local Union No. 470. At that time Bucks County was a member of the Contractors Association of Eastern Pennsylvania and was covered by a collective bargaining agreement, known as the Five County Agreement, between the Contractors Association and Local 470. Bucks County and, after 1968, Crane Rentals were members of the Contractors Association and covered by successive Five County Agreements until 1977. Although Crane Rentals has dealt directly with Local 470 since 1977, the collective bargaining agreements between Crane Rentals and Local 470 have been basically the same as the contemporaneous Five County Agreements.

---

2. The record contains certain inconsistencies as to dates and the parties seem occasionally to confuse the various McHugh companies. In my view, none of the factual questions thereby raised are material. Where dates and similar details are unclear I have, whenever possible, set forth the version found in plaintiffs' most recent answers to interrogatories.

Since the early 1970s, Crane Rentals has also been party to a collective bargaining agreement with Local 470 and Operating Engineers Local 542C. This agreement covers nondriving employees who work in Crane Rentals' maintenance shop.

Throughout the relevant time period, the applicable Five County Agreements and shop agreements have required employers to contribute to the Teamsters Pension Trust and Health and Welfare Funds for hours worked by covered employees. The Pension Trust and Health and Welfare Funds are multiemployer trust funds established in the 1950s. Under the declarations of trust for both Funds, the trustees [3] have the power to establish the policies and rules governing the Funds and to promulgate written benefit plans. The plans promulgated by the trustees pursuant to their authority have consistently provided that an individual, in order to participate in the Funds, must be an employee whose employment is covered by a collective bargaining agreement. For example, the Pension Plan in effect when the McHughs joined Local 470 provided that "[a]n individual shall be considered in employment with an Employer while carried on the records of the Employer as an Employee in active employment in the collective bargaining unit which at the time of reference was represented by the Union...." Teamsters Pension Plan of Philadelphia and Vicinity at Art. I, § K(1) (effective Jan. 1, 1963). A pension plan description distributed to members in or about January of 1976 stated that "[t]he Plan is maintained for the exclusive benefit of those employees who are in collective bargaining units which are covered by written collective bargaining agreement(s)...." Teamsters Pension Plan of Philadelphia and Vicinity Summary Plan Description at i (effective Jan. 1, 1976). *See also id.* at 3. The Pension Plans in effect for each year in which the McHughs contributed to the Funds con-

tained comparable provisions. Similarly, benefit booklets distributed by the Health and Welfare Fund throughout the relevant time period have made clear that eligibility for benefits is contingent on being a member of a class of employees covered by a collective bargaining agreement.

The McHugh companies made contributions to both Funds on behalf of the four McHugh brothers from approximately 1965 until 1983. Edward L. McHugh applied for early retirement pension benefits in 1981. The Pension Fund administrator denied his application and, after a hearing, a panel of Fund trustees affirmed the denial. In a written decision issued in April of 1983, the panel held that Edward McHugh as an owner, officer and supervisor of the McHugh companies was an employer, not an employee covered by a collective bargaining agreement. Since the Pension Fund is solely for the benefit of employees, the panel concluded that Edward McHugh was ineligible to receive a pension.

Apparently, all of the McHughs were subsequently informed that they could not qualify for benefits from either the Pension Fund or the Health and Welfare Fund. They thereupon instituted this lawsuit.

## II. *The Parties' Contentions*

The Funds argue that they are entitled to summary judgment because under § 302(c)(5) of the Labor Management Relations Act (LMRA), 29 U.S.C. § 186(c)(5), an employer-funded pension or health and welfare plan must be for the exclusive benefit of employees. They rely on the definition of "employee" in 29 U.S.C. § 152(3), which specifically excludes "any individual employed as a supervisor." They also point to the documents governing the Funds, which define the class of beneficiaries as those employees covered by a collective bargaining agreement. According to defendants, the McHughs are employers and supervisory personnel, not collective bargaining

---

**3.** Charles J. Schaffer, Jr., Administrator of the Pension Trust Fund since 1957 and the Welfare Fund since 1967, asserted in a sworn statement that each Fund is governed by a separate Board of Trustees comprised of an equal number of

union and employer representatives. Presently, the same individuals serve on each Board. Declaration of Charles J. Schaffer, Jr. at ¶ 7 (June 28, 1985).

unit employees, and are thus not entitled to receive benefits from the Funds.

Plaintiffs, in support of their cross-motion for summary judgment, insist that the LMRA does not prohibit an employer and a union from agreeing to include management personnel in a collective bargaining unit. They contend that the McHughs, even if supervisors, are eligible for benefits because they are members of Local 470, perform bargaining unit work, and are not specifically excluded from coverage by the Funds' governing documents or the applicable collective bargaining agreements. Plaintiffs also contend that Local 470 agreed to treat the McHughs as covered employees, and that the Funds therefore lack standing to contest their eligibility and are estopped from denying them benefits. Finally, if the individual plaintiffs are found ineligible, Crane Rentals and Equipment Corporation seek reimbursement for all contributions made to the Funds on behalf of the McHughs.

### III. *Discussion*

#### A. *Standard of Review*

■ A plaintiff who challenges a denial of benefits by the trustees of an employee benefit plan must establish that the trustees' decision was arbitrary and capricious. *Gaines v. Amalgamated Insurance Fund*, 753 F.2d 288, 289 (3d Cir.1985); *Adams v. New Jersey Brewery Employees' Pension Trust Fund*, 670 F.2d 387, 397–98 (3d Cir. 1982). The trustees' interpretation of plan provisions "should be upheld even if the court disagrees with it, so long as the interpretation is rationally related to a valid plan purpose and not contrary to the plain language of the plan." *Gaines*, 753 F.2d at 289.

#### B. *The Trustees' Decision*

■ After careful consideration of the record, I conclude that the trustees' interpretation of the Pension and Health and Welfare Plans as excluding the McHughs from participation is not arbitrary and capricious. As discussed above, the Plans require that Fund participants be employees whose work is covered by a collective bargaining agreement. The question, then, is whether the trustees could reasonably conclude that the McHughs were not members of a collective bargaining unit or covered by a collective bargaining agreement.[4] Plaintiffs do not claim that the McHughs were covered by the shop agreements, which specifically exclude "office and clerical employees, salesmen, professional employees, guards and supervisors." *E.g.*, Agreement between Local Union 542C, International Union of Operating Engineers, Local 470 Affiliated with the International Brotherhood of Teamsters, and the McHugh Brothers for shop employees at Art. I, § III (effective June 11, 1974 through June 10, 1976). Plaintiffs do contend, however, that the McHughs have been covered since 1964 by successive Five County Agreements.

■ As the McHughs point out, the relevant Five County Agreements do not specifically exclude supervisors or management personnel from the bargaining unit. The employees covered by the agreements, however, are those engaged in driving trucks or performing related duties. Although certain details concerning the McHugh brothers' responsibilities and the extent of their supervisory authority are in dispute, the brothers' own sworn statements show that they managed and participated in virtually every aspect of the McHugh companies' business and spent rel-

**4.** Defendants note that only Bucks County and Crane Rentals were parties to collective bargaining agreements with Local 470 and that the time the brothers spent working for the nonunionized McHugh companies was technically not covered by those agreements. Plaintiffs, however, point to a 1975 arbitration proceeding, which resulted in a decision (at the time vigorously opposed by the McHughs) that the interrelationships among the various McHugh entities justified treating them all as bound by the existing collective bargaining agreements. *See In the Matter of Arbitration Between the Contractors Association of Eastern Pennsylvania and McHugh Brothers Crane Rentals, Inc.*, (June 27, 1975) (King, Arb.). For purposes of resolving the pending summary judgment motions, I will assume that the relevant collective bargaining agreements apply to the employees of all McHugh companies.

atively little time actually performing teamster work.

By his own admission, Edward L. McHugh has spent most of his time since 1964 running the companies' maintenance shop. He testified at his deposition that he has always been a supervisor, has disciplined employees and participated in hiring and firing, and has been involved in employee grievance procedures as a representative of management. Deposition of Edward L. McHugh at 23–28, 36, 42–43, 84, 113, 116–17. He drove trucks only between the companies' shops and in emergencies, perhaps twice a month. *Id.* at 85–86; Transcript of Hearing for Appeal of Denied Pension Claim at 24 (Feb. 1, 1983) (testimony of Edward L. McHugh).

James McHugh has handled a broad variety of tasks for the McHugh companies, including bidding, selling and running jobs, running the New Hope and Ivyland Railroad and overseeing the companies' financial affairs. He exercised managerial authority at job sites, participated in the hiring and firing of employees and was occasionally involved in labor relations matters as a representative of management. Deposition of James McHugh at 20–21, 25, 50–53, 58–62, 77–79, 97–98 (June 6, 1985). In response to defendants' interrogatories, James McHugh stated that since 1973 he has spent about 10% of his time driving trucks. He did not make clear how much time he spent performing teamster work before 1973. Supplemental Answers to Interrogatories by James McHugh at 3 (June 6, 1985). Thomas Jordan, however, who has worked for the McHughs as a truck driver and dispatcher since 1967 or 1968, testified at his deposition that James McHugh was primarily involved in office work and drive trucks perhaps once a

month. Deposition of Thomas Jordan at 24–25.

Gerard McHugh's deposition states that between approximately 1965 and 1968 he spent most of his time driving trucks. He became office manager in 1967 or 1968, and thereafter performed a variety of jobs, including inspecting cranes for the Department of Labor, taking care of vehicle registration and licensing and working in the office. He conceded that many of his activities could not be classified as teamster work. After 1970 or 1971, he testified, he drove trucks on an average of twice a month, generally in emergencies. Gerard McHugh denies that he was a supervisor before 1982, when he became President of the McHugh companies. He claims that until 1982 he exercised, at the most, indirect supervisory authority under instructions from his mother and brothers. He did, however, act as a site foreman and, at least since 1972, has been involved as a management representative in disciplining bargaining unit employees. Deposition of Gerard McHugh at 11–27, 80–87; Plaintiff Gerard J. McHugh's Supplemental Answers to Interrogatories at 2–3.

Although Robert McHugh is deceased, the record contains sufficient evidence concerning his position with the McHugh companies. According to the depositions of the individual plaintiffs and certain McHugh employees, Robert McHugh made policy decisions for the companies, dealt with labor matters in a management capacity and was responsible for the hiring and firing of employees. The precise amount of field or teamster work he performed is not clear, but his brothers and co-workers acknowledge that throughout the relevant period he spent much of his time in the office, as a dispatcher and operations manager.[5] Deposition of Edward L. McHugh at 34–35, 54,

5. Christina McHugh estimated that Robert McHugh spent over 60% of his time before 1973 and 20% thereafter performing teamster work. She admitted, however, that she was not with her husband during his working hours and did not have specific personal knowledge of his activities. Supplemental Answers of Plaintiff Christina McHugh to Interrogatories of Defend-

ant Funds at Nos. 2(b)(2), 4(b)(2), 6(b)(2), 7(b), 22(a), 24(a), 26(a), 29(a) (May 27, 1985). In light of the testimony of those who did work with Robert McHugh and were personally familiar with his schedule, her estimates do not create an issue of fact as to whether Robert McHugh was a bargaining unit employee.

124; Deposition of James McHugh at 50–53, 65–66; Deposition of Gerard McHugh at 49–50; Deposition of Thomas Jordan at 23, 37–39. *See also* Answers of Plaintiffs Christina McHugh, Gerard J. McHugh and James C. McHugh to Interrogatories of Defendant Funds at Nos. 2(b)(2), 29(a) (Feb. 27, 1985).

The McHughs differed from bargaining unit employees in other significant respects. The Five County Agreements contain detailed provisions concerning seniority, grievance procedures, hours of work, holidays, rates of pay, overtime, etc. The McHughs do not dispute that these provisions have never applied to them. Unlike their teamster employees, who were paid by hourly wage, the McHugh brothers received salaries. They did not keep detailed time records and worked over 40 hours per week without receiving overtime pay. If they worked on a holiday they received no extra pay but could, if they chose, take compensatory time off. The inclusion of their names on company seniority lists was a formality; the McHughs were not, in practice, subject to layoffs ahead of employees with more seniority. The McHughs also enjoyed certain fringe benefits not available to their employees. They participated in Equipment Corporation's profit sharing plan and the companies made contributions on their behalf to two, and in the case of Edward McHugh three, union pension and health and welfare plans.[6] Although regular employees were responsible for their own union dues, the McHugh brothers' dues were paid by the companies. *See* Deposition of Edward L. McHugh at 44, 48–49, 105–08, 143–44; Deposition of James McHugh at 30, 93, 101–06, 112, 115, 134; Deposition of Gerard McHugh at 17–20, 28, 32–34, 55–60, 63, 78,

90–91; Deposition of Christina McHugh at 25, 31–33 (June 4, 1985); Deposition of Lorraine Bulvin at 75, 94–106, 117, 138, 150–51, 154–55 (June 4, 1985).

I recognize that in considering motions for summary judgment it is my responsibility to determine if issues of material fact exist, not to resolve such issues. In my view, however, the facts which are disputed in this case are not material. The McHughs' own statements and descriptions of their positions provide ample support for the trustees' decision. Plaintiffs claim the brothers joined Local 470 so that they could continue to perform teamster work when necessary. Plaintiffs do not, however, allege that the brothers' duties and working conditions were governed by the terms of the collective bargaining agreement. Whether or not each brother's role could technically be described as supervisory, and regardless of the precise amount of time each spent performing teamster work, the record is clear that their involvement in the companies and the scope of their activities went far beyond those of regular bargaining unit employees. At any particular time, the brothers acted in whatever capacity was necessary to the operations of the companies they owned and managed. Their membership in Local 470 and their performance of teamster work as part of their broader duties do not suffice to make them employees subject to a collective bargaining agreement or eligible for Fund benefits. *Champion v. Davis*, 459 F.Supp. 305, 308 (N.D.Ala.1978); *Zaucha v. Polar Water Co.*, 444 F.Supp. 602, 605–06 (W.D. Pa.1978); *Trucking Employees of North Jersey Welfare Fund, Inc. v. Vrablick*, 177 N.J.Super. 142, 425 A.2d 1068, 1072 (App. Div.1980). In light of the McHugh brothers' status as shareholders, officers and

---

**6.** The McHugh companies made contributions to the Operating Engineers Local 542 Fund (on behalf of Edward, Gerard and Robert McHugh), to the Operating Engineers Local 825 Fund (on behalf of James McHugh) and to the Operating Engineers Local 675 Fund (on behalf of Edward McHugh). Contributions were paid to these Funds on the basis of a 40-hour work week for each McHugh. The companies' contributions to the Teamsters Funds from 1964 to 1983 were

also made on a 40-hour per week basis for each McHugh, although the McHughs admit they did not spend 40 hours per week performing teamster work. *See* Deposition of Edward L. McHugh at 121–22, 146–47; Deposition of James McHugh at 100–02, 133–34; Deposition of Gerard McHugh at 55–56; Deposition of Christina McHugh at 31–32; Deposition of Lorraine Bulvin at 94–106.

directors of the companies, the breadth of their responsibilities and the relatively minor portion of their time and energy which they devoted to teamster work, the trustees could reasonably conclude that the brothers were not employees whose work was covered by a collective bargaining agreement. *See, e.g., Van Gunten v. Central States, Southeast and Southwest Areas Pension Fund,* 672 F.2d 586, 587 (6th Cir.1982); *Aitken v. IP & GCU–Employer Retirement Fund,* 604 F.2d 1261, 1264–66 (9th Cir.1979); *Electricians Health, Welfare and Pension Plans v. Gulino,* 594 F.Supp. 1265, 1269–70 (M.D.La.1984); *Higgins v. Carpenters Health & Welfare Fund,* 524 F.Supp. 601, 605–06 (E.D.Pa. 1981); *Champion,* 459 F.Supp. at 307–09; *Zaucha,* 444 F.Supp. at 605–06; *Miracle v. United Mine Workers of America Welfare and Retirement Fund,* 373 F.Supp. 603, 604 (D.D.C.1974).

■ The Funds have also expressed concern that paying benefits to the McHughs would violate the LMRA. Section 302 prohibits employers from giving anything of value to an employee representative, excepting payments to a trust fund "for the sole and exclusive benefit of employees." 29 U.S.C. § 186(a), (c)(5). Defendants argue that the definition of "employee" in 29 U.S.C. § 152(3) specifically excludes "any individual employed as a supervisor"[7] and that it would thus be illegal for the McHughs to receive benefits from the Funds. *See, e.g., Chase v. Trustees of the Western Conference of Teamsters Pension Trust Fund,* 753 F.2d 744, 748 n. 3 (9th Cir.1985); *Melang v. I.B.E.W. Pacific Coast Pension Fund,* 93 L.R.R.M. (BNA) 2389, 2390 (W.D.Wash.1976). Plaintiffs respond that § 152(3) merely prevents supervisors from forcing their employers to recognize them as employees for purposes of collective bargaining. An employer may voluntarily enter into a collective bargain-

ing agreement covering supervisors and, if the employer does so, the supervisors may participate in a § 302 trust fund. *See Reiherzer v. Shannon,* 581 F.2d 1266, 1275–76 (7th Cir.1978).

In my view, the question whether supervisors can ever be beneficiaries of a § 302 trust is beside the point. The Funds' position is that the McHughs are not merely supervisory employees—they constitute the management of the McHugh companies and should thus be classified as employers, who by the terms of § 302 cannot benefit from the Funds. *See also* 29 U.S.C. § 1103(c)(1) ("the assets of a[n employee benefit] plan shall never inure to the benefit of any employer"). The McHughs' relationship to the companies, as discussed above, together with the trustees' "legitimate concern about complying with the requirements of section 302 ... provides ample support for the conclusion that their interpretation is reasonable." *Aitken,* 604 F.2d at 1265. *See also Peckham v. Board of Trustees,* 653 F.2d 424, 426–28 (10th Cir.1981); *Gomez v. Lewis,* 414 F.2d 1312, 1315–16 (3d Cir.1969); *Freeman v. Central States, Southeast and Southwest Areas Pension Fund,* 86 Lab.Cas. (CCH) ¶ 11,422 (E.D.Mich.1979); *Warren v. Davis,* 95 L.R. R.M. (BNA) 2025 (E.D.Okla.1977); *Melang,* 93 L.R.R.M. at 2390; *Vrablick,* 425 A.2d at 1072–73. Because I conclude that the Funds' decision was not arbitrary and capricious, I need not determine if it was compelled by the LMRA.

### C. Standing and Estoppel

Plaintiffs do not deny that in order to be eligible for benefits the McHugh brothers must be employees covered by a collective bargaining agreement. They contend, however, that when the relevant agreements were signed Local 470 and the employer agreed that the McHughs were covered employees. This agreement, accord-

---

**7.** Title 29 U.S.C. § 152(11) defines "supervisor" to mean:

any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment.

ing to plaintiffs, is binding upon the Funds. Although plaintiffs' reasoning is somewhat difficult to follow, it appears to have two aspects: first, that the Funds lack standing to dispute the McHughs' coverage under the collective bargaining agreements and, second, that the Funds are estopped from denying benefits to the McHughs.

Plaintiffs' standing argument is premised on the fact that the Funds are not party to the collective bargaining agreements between Local 470 and the McHugh companies. They maintain that the interpretation of a collective bargaining agreement must be left to the parties, that the union and employer regarded the McHughs as covered employees for approximately 17 years and that the Funds therefore lack standing to contest the McHughs' coverage.

■ Plaintiffs' arguments are without merit. It is true that the Funds' existence is due ultimately to collective bargaining agreements between the union and employer, requiring the employer to contribute to health and welfare and pension plans. Fund trustees must enforce eligibility provisions in a collective bargaining agreement. *United Mine Workers of America Health & Retirement Funds v. Robinson,* 455 U.S. 562, 573–74, 102 S.Ct. 1226, 1233, 71 L.Ed.2d 419 (1982). In this case, however, the applicable collective bargaining agreements set forth no eligibility criteria and make no provision for owners and managerial personnel. The Funds were actually established by declarations of trust, which gave to the trustees the power to promulgate policies and rules governing the Funds. The trustees accordingly adopted plans defining eligible employees as those governed by a collective bargaining agreement.

■ Under established law and the clear language of the Funds' governing documents, interpretation of plan provi-

sions is the province of the trustees. *See, e.g., Gaines,* 753 F.2d at 289; *Aitken,* 604 F.2d at 1264–65. The trustees' decision concerning the McHughs' eligibility for benefits is entitled to no less deference because the eligibility rules set forth in the plans refer to a collective bargaining agreement. *See, e.g., Van Gunten,* 672 F.2d at 587 (applying arbitrary and capricious standard of review to trustees' decision that appellant was not a member of a collective bargaining unit and was thus ineligible for benefits); *Aitken,* 604 F.2d at 1264–65; *Gulino,* 594 F.Supp. at 1268–70. Moreover, the trustees are not bound by alleged oral understandings between Local 470 and the McHughs. Employer benefit plan agreements must, by law, be in writing and oral modifications or supplementations are invalid. 29 U.S.C. §§ 186(c)(5)(B), 1102(a)(1); *Abbate v. Browning-Ferris Industries,* 767 F.2d 52, 54–55 (3d Cir.1985); *Kemmis v. McGoldrick,* 706 F.2d 993, 996–97 (9th Cir.1983); *Lewis v. Seanor Coal Co.,* 382 F.2d 437, 442–44 (3d Cir.1967), *cert. denied,* 390 U.S. 947, 88 S.Ct. 1035, 19 L.Ed.2d 1137 (1968). *See also Sinai Hospital of Baltimore, Inc. v. National Benefit Fund,* 697 F.2d 562, 567–68 (4th Cir. 1982).

■ In my view, the principles discussed above compel rejection of plaintiffs' standing argument. The trustees' authority to determine eligibility would be of little value if they could take no independent action to enforce their decisions. The Supreme Court, in a somewhat different context,[8] held recently that an employee benefit plan need not rely on a union to enforce employer obligations to the plan or to resolve disputes concerning such obligations. *Central States, Southeast and Southwest Areas Pension Fund v. Central Transport, Inc.,* —— U.S. ——, ——, 105 S.Ct. 2833, 2842–45, 86 L.Ed.2d 447 (1985). The Court reasoned that the union and plan trustees have different interests and responsibili-

---

**8.** The issue before the Supreme Court in *Central States* was whether an employee benefit plan has the right to audit the records of employees whom the employer denies are plan participants. The Court upheld the plan's right to

audit, reasoning that the trustees have a duty to determine who the participants are and should not be forced to rely on monitoring by the employer or the union. —— U.S. at ——, 105 S.Ct. at 2840–45.

ties. In order to discharge their fiduciary duties under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001 *et seq.*, the trustees must be free to act independently of the union. *Id.* at —— ——, 105 S.Ct. at 2838–45. *See also Schneider Moving & Storage Co. v. Robbins,* 466 U.S. 364, 375–76, 104 S.Ct. 1844, 1851, 80 L.Ed.2d 366 (1984); *Moldovan v. Great Atlantic & Pacific Tea Co.,* 790 F.2d 894 (3d Cir.1986).

These considerations apply equally to the case before me. The trustees are charged with administering the Funds. Because their responsibilities run to all plan participants, not just current employees or union members, their concept of the Funds' best interests may differ from those of the union and the employer. The trustees' authority to make decisions concerning eligibility must include the right to enforce those decisions through litigation.

Plaintiffs' estoppel argument must fall on similar grounds. Edward, James and Gerard McHugh allege that when they joined Local 470 and on several occasions thereafter they were assured by Ronald Egan, Raymond Taylor and Richard Cammorotti that they could participate in the Funds. James McHugh claims to have received similar assurances from Peter Schultz and William Crean. The parties agree that Egan, Taylor and Cammorotti were union officials and not Fund trustees. Defendants have submitted an unchallenged document which shows that Schultz was a Fund trustee during the 1960s and Crean was a Fund trustee from 1978 to 1981.

■ The law is clear that erroneous advice from a union official cannot be attributed to the trustees of an employee benefit fund. *E.g., Chambless v. Masters, Mates & Pilots Pension Plan,* 772 F.2d 1032, 1041 (2d Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 1189, 89 L.Ed.2d 304 (1986); *Knoll v. Phoenix Steel Corp.,* 465 F.2d 1128, 1132 (3d Cir.1972), *cert. denied,* 409 U.S. 1126, 93 S.Ct. 941, 35 L.Ed.2d 257 (1973); *Dudo v. Schaffer,* 551 F.Supp. 1330, 1342 (E.D.Pa.1982), *aff'd mem.,* 720

F.2d 661 (3d Cir.1983); *Zaucha,* 444 F.Supp. at 606. The Funds are separate entities from the union and, as the governing documents provide, the power to administer the Funds is vested solely in the trustees. *See, e.g.,* Teamsters Health & Welfare Fund Original Declaration of Trust at ¶¶ 1, 4, 9 (Dec. 13, 1951); Teamsters Pension Trust Fund Agreement and Declaration of Trust at Art. III, § 1; Art. IV; Art. IX, § 2 (Dec. 30, 1957); Teamsters Pension Plan at Art. V, § A (effective Sept. 1, 1964). *See also NLRB v. Amax Coal Co.,* 453 U.S. 322, 328–30, 101 S.Ct. 2789, 2793–94, 69 L.Ed.2d 672 (1981); *Talarico v. United Furniture Workers Pension Fund A,* 479 F.Supp. 1072, 1079–80, 1083 (D.Neb. 1979); *Huge v. Overly,* 445 F.Supp. 946, 947 (W.D.Pa.1978); *Zaucha,* 444 F.Supp. at 606.

■ I reject plaintiffs' contention that the McHughs' reliance on statements by union officials was reasonable because the Funds were not in fact independent from the union. A similar claim was rejected by the district court in *Chambless v. Masters, Mates & Pilots Pension Plan,* 571 F.Supp. 1430 (S.D.N.Y.1983). The court recognized that there was, "as one would expect, a close relationship between the union and the plan." Because, however, the employee benefit plan's declaration of trust and the LMRA made "crystal clear that only the trustees—and not the union—are authorized to obligate the plan," the court held that reliance on a union agent was unreasonable. *Id.* at 1452. In this case, as in *Chambless,* the Funds maintain close contact with the union. Plaintiffs have not, however, submitted evidence to refute the Fund Administrator's sworn statement that the union has no authority to control the Funds and that the Funds are set up to deal with participants directly, not through the union. *See* Declaration of Charles J. Schaffer, Jr. at ¶ 26; Deposition of Charles J. Schaffer, Jr. at 43–51 (June 7, 1985).

■ I also reject plaintiffs' claim that the Fund is bound by the alleged statements of Peter Schultz and William Crean. I recognize that the Third Circuit has held

that a single trustee's statement can bind an employee benefit fund if the trustee has actual or apparent authority to act on the fund's behalf. *Rosen v. Hotel and Restaurant Employees & Bartenders Union*, 637 F.2d 592 (3d Cir.), *cert. denied*, 454 U.S. 898, 102 S.Ct. 398, 70 L.Ed.2d 213 (1981). In *Rosen*, a trustee who was secretary to the fund initiated a meeting with plaintiff Rosen specifically to discuss a threat to Rosen's pension eligibility. The trustee advised Rosen how his rights could be preserved and accepted money from him to bring his pension contributions up-to-date. Under these circumstances, the court held, Rosen reasonably relied on the trustee's representations and the Fund was therefore estopped from denying him a pension. *Id.* at 597–98 & n. 7.

In my view, this case is distinguishable from *Rosen*. First, the Funds have submitted evidence indicating that James McHugh's alleged conversation with Schultz was in 1960, four years before the McHughs joined the union, and that the conversation with Crean was in 1975, three years before Crean became a trustee. Even apart from this evidence, which plaintiffs have not attempted to refute, I note that James McHugh's reported conversations with Schultz and Crean were very different from the interaction between the plaintiff and the trustee in *Rosen*. According to James McHugh, he once "went out drinking" with Crean during a Local 470 strike and Crean threatened that he would lose his benefits if he crossed the picket line. Supplemental Answers to Interrogatories by James McHugh at 5 (June 6, 1985). James McHugh also described one occasion on which Schultz said he would be entitled to benefits as long as his company contributed to the Funds. McHugh admitted he did not ask Schultz specific questions concerning his eligibility. Deposition of James McHugh at 128–32. These casual comments do not rise to the level of the specific, detailed assurances in *Rosen*. *See Chambless*, 571 F.Supp. at 1452.

Moreover, the McHughs were not ordinary employees. As owners and managers of the contributing companies, they had access to all of the Funds' governing documents. A review of those documents should have put them on notice that they might not be eligible and that they should seek formal clarification from the Funds as to their status.[9] Plaintiffs admit the McHughs never did so. *See, e.g.*, Plaintiff Edward L. McHugh's Answers to Interrogatories of Defendant Funds at No. 30(a); Answers of Plaintiffs Christina McHugh, Gerard J. McHugh and James C. McHugh to Interrogatories of Defendant Funds at No. 30(a).

Plaintiffs contend that the Funds were responsible to inform them of their ineligibility. As I have already stated, the definitions in the Funds' governing documents provided adequate notice that persons such as the McHughs might not be eligible participants. The Third Circuit has stated that if trustees are aware that an employee is ineligible they must so inform him. *Rosen*, 637 F.2d at 600. Here, however, the McHughs assert only that the Funds should have known of their status; they present no evidence that the Funds were ever officially informed. Moreover, the trustees in *Rosen* failed to inform the plaintiff of a fact which he was not likely to know—that his employer was not making contributions on his behalf. *See id.* In contrast, details concerning the McHughs' positions were peculiarly within their knowledge, not that of the Funds. I cannot conclude that the McHughs were "entitled to the kind of individualized attention ... [they] urge[ ] here." *Higgins v. Carpenters Health & Welfare Fund*, 524 F.Supp. 601, 608 (E.D.Pa.1981). *See also Murn v. United Mine Workers*, 718 F.2d

---

**9.** The declarations of trust set forth the procedures which the trustees must follow in making decisions concerning Fund policy and administration. Moreover, since approximately 1976, various Fund documents have explicitly stated that only the administrator is authorized to advise persons of their rights under the Plans. *See, e.g.*, Teamsters Pension Plan (effective Jan. 1, 1976); Health and Welfare Benefit Book (June 1, 1979).

359, 362 (10th Cir.1983); *Vrablick*, 425 A.2d at 1073.

■■■ As a further ground for their estoppel claim, plaintiffs point out that the Funds have accepted contributions on the McHughs' behalf for approximately 17 years. Payment of contributions into an employee benefit fund cannot, however, "create an eligibility for benefits that otherwise would not exist." *Freeman v. Central States, Southeast and Southwest Areas Pension Fund*, 86 Lab.Cas. (CCH) ¶ 11,422 at 21,609 (E.D.Mich.1979). *See also Talarico*, 479 F.Supp. at 1083; *Vrablick*, 425 A.2d at 1072. *Cf. Burke v. French Equipment Rental, Inc.*, 687 F.2d 307, 311–12 (9th Cir.1982) (an employer may have an obligation to contribute to a benefit plan for time worked by an employee even if the employee is not eligible for benefits). I conclude that plaintiffs' various estoppel theories are without merit.

## D. *Restitution*

Because I have determined that the individual plaintiffs are not entitled to receive benefits from the Funds, I must address the corporate plaintiffs' claim for reimbursement. Equipment Corporation and Crane Rentals seek to recover the approximately $165,000 in contributions which they paid on behalf of the McHugh brothers from 1964 to 1983.

■■■ State law applies to plaintiffs' claim for return of contributions made before January 1, 1975, the effective date of ERISA. *See Reuther v. Trustees of the Trucking Employees of Passaic and Bergen County Welfare Fund*, 575 F.2d 1074, 1077–78 (3d Cir.1978) (ERISA does not apply to contributions made before its effective date); *Crown Cork & Seal Co. v. Teamsters Pension Fund*, 549 F.Supp. 307, 312 (E.D.Pa.1982), *aff'd mem.*, 720 F.2d 661 (3d Cir.1983). Pennsylvania law provides for restitution of such overpayments only if they were made pursuant to a mistake of fact. According to the Pennsylvania Supreme Court, "[m]oney deliberately and voluntarily paid under a contract, with knowledge or means of knowledge of the

material facts and without fraud or duress, even though paid under a mistake of law as to the interpretation of a contract cannot be recovered back." *William Sellers & Co. v. Clarke-Harrison, Inc.*, 354 Pa. 109, 113, 46 A.2d 497, 499 (1946). The corporate plaintiffs in this case were in possession of the relevant facts concerning the McHugh brothers' positions, but maintain they were unaware that persons in such positions were ineligible to participate in the Funds. Plaintiffs' mistake (if indeed it was a mistake) concerns the coverage of the trust fund agreements and was therefore a mistake of law. *See Chase v. Trustees of the Western Conference of Teamsters Pension Trust Fund*, 753 F.2d 744, 750–51 (9th Cir.1985); *Martin v. Hamil*, 608 F.2d 725, 729 (7th Cir.1979); *Gulino*, 594 F.Supp. at 1273–74. Plaintiffs are thus not entitled to recover payments made to the Funds before January 1, 1975.

■■■ Plaintiffs' claim for restitution of payments made after January 1, 1975 is governed by ERISA. Section 403(c)(1) of ERISA provides that "the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan." 29 U.S.C. § 1103(c)(1). Section 403(c)(2)(A), however, provides in pertinent part:

> In the case of a contribution ... made by an employer to a multiemployer plan by a mistake of fact or law ... paragraph (1) shall not prohibit the return of such contribution or payment to the employer within 6 months after the plan administrator determines that the contribution was made by such a mistake.

29 U.S.C. § 1103(c)(2)(A)(ii).

In *Crown Cork & Seal Co. v. Teamsters Pension Fund*, 549 F.Supp. 307 (E.D.Pa. 1982), *aff'd mem.*, 720 F.2d 661 (3d Cir. 1983), Judge Giles held that an employer has no private right of action for restitution under § 403(c)(2)(A). As Judge Giles noted, ERISA was enacted to protect the

pension rights of employees and their beneficiaries. Employers are conspicuously omitted from ERISA's list of persons empowered to bring a civil action. *Id.* at 311–12. *See* 29 U.S.C. § 1132(a). Further, the language of § 403(c)(2)(A)(ii) "is entirely permissive.... [T]he use of the phrase, ... ['shall not prohibit'] expresses an intent to allow, but not require the trustees to return contributions if they choose to do so, as an exception to their strict fiduciary duties to maintain the funds for the benefit of employees." *Id.* at 311. Judge Giles concluded that to require trustees to refund mistaken contributions could undermine the funds' integrity and would thus violate the principles underlying ERISA. *Id.* at 311–12. *See also Higgins,* 524 F.Supp. at 610; *In re Malone,* 39 B.R. 81 (Bankr.E.D.Pa.1984).

As plaintiffs point out, other courts have recognized a cause of action for restitution. *See, e.g., Award Service, Inc. v. Northern California Retail Clerks Unions and Food Employers Joint Pension Trust Fund,* 763 F.2d 1066, *motion to recall mandate denied,* 774 F.2d 1391 (9th Cir. 1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 850, 88 L.Ed.2d 890 (1986); *Chase,* 753 F.2d 744; *Peckham v. Board of Trustees,* 719 F.2d 1063, *modified and reaff'd,* 724 F.2d 100 (10th Cir.1983). Judge Giles' reasoning, however, is compelling. Moreover, *Crown Cork & Seal* has been summarily affirmed by the Third Circuit and I am bound by it. *See Teamsters Pension Trust Fund v. Carolina Freight Carriers Corp.,* No. 84–5983, slip op. at 12 (E.D.Pa. Aug. 29, 1985). Defendants are therefore entitled to summary judgment with respect to the corporate plaintiffs' restitution claim.[10]

## IV. *Attorneys' Fees*

Both parties have requested an award of attorneys' fees. Section 502(g)(1) of ERISA provides that "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). In reviewing requests for fees under ERISA, courts have considered five policy factors:

(1) the offending parties' culpability or bad faith;

(2) the ability of the offending parties to satisfy an award of attorneys' fees;

(3) the deterent [sic] effect of an award of attorneys' fees against the offending parties;

(4) the benefit conferred on members of the pension plan as a whole; and

(5) the relative merits of the parties' position.

*Ursic v. Bethlehem Mines,* 719 F.2d 670, 673 (3d Cir.1983).

Plaintiffs maintain that they are entitled to attorneys' fees even if they lose, on the ground that "[a]n enormous amount of time has been spent to research write [sic] this brief so that the issues are placed in proper context and will assist the court in reaching a proper result." Plaintiffs' Memorandum of Law in Response to Defendant Trust Fund's Motion for Summary Judgment and in Support of Plaintiffs' Cross-Motion for Summary Judgment at 62–63. This request hardly merits discussion. Plaintiffs have prevailed on none of their claims against the Funds and many of their arguments were more confusing than helpful to the court. Although § 502(g)(1) does not by its terms limit attorneys' fee awards to prevailing parties, I believe it would be an abuse of discretion to grant fees to these plaintiffs. *Bittner v. Sadoff & Rudoy Industries,* 728 F.2d 820, 829 (7th Cir.1984); *Lawrence v. Westerhaus,* 749 F.2d 494, 496 (8th Cir.1984). *See also Ruckelshaus v. Sierra Club,* 463 U.S. 680, 103 S.Ct. 3274, 77 L.Ed.2d 938 (1983).

---

**10.** *Reuther v. Trustees of the Trucking Employees of Passaic and Bergen County Welfare Fund,* 575 F.2d 1074 (3d Cir.1978), is inapposite to the issues presented here. *Reuther* held that equitable principles could affect the application of the one-year limitations period set forth in § 403(c)(2)(A). The court specifically limited its holding to the "unusual circumstances" of the case and did not reach the issue of whether the plaintiff employer was entitled to restitution. *Id.* at 1078–79. *See Martin,* 608 F.2d at 730 n. 7.

■ The Funds' application for fees is more reasonable. On balance, however, after consideration of the factors enumerated above, I believe their request should be denied. In particular, I note that although some of plaintiffs' arguments were beneath notice, their basic claims were not entirely unreasonable. Resolution of the issues required careful analysis of the relevant statutes and the case law. In addition, I cannot say that plaintiffs' attempt to obtain benefits or restitution from the Funds after having contributed for approximately 17 years warrants sanctions as a deterrent. Finally, the record reflects that the McHugh companies and the individual McHughs are in bankruptcy. Plaintiffs have undoubtedly suffered a severe financial blow from the loss of their benefits and denial of their restitution claim. I decline to impose upon them the additional burden of liability for defendants' attorneys' fees.

In conclusion, the Funds' motion for summary judgment will be granted and plaintiffs' cross-motion for summary judgment will be denied. The parties' applications for attorneys' fees will be denied.